COUNTY OF LOS ANGELES, CALIFOR-
NIA, and the State of South Carolina,
et al., Plaintiffs,

Louisiana Municipal Association, City of
New Orleans, Louisiana, et al.,
Plaintiff-Intervenors,

v.

Honorable F. Ray MARSHALL, Secretary,
United States Department of Labor,
Honorable W. Michael Blumenthal, Sec-
retary, United States Department of
Treasury, Honorable James Kurtz, Com-
missioner of Internal Revenue Service
of the United States, Defendants,

American Federation of State, County,
and Municipal Employees, American
Federations of Labor and Congress of
Industrial Organizations, Defendant-In-
tervenors.

Civ. A. No. 77–2023.

United States District Court,
District of Columbia.

Dec. 29, 1977.

Charles S. Rhyne, William S. Rhyne, Martin W. Matzen, Stephen P. Elmendorf, Washington, D. C., for plaintiffs.

David V. Anthony, Gregory A. Smith, Washington, D. C., R. Gordon Kean, Jr., William R. D'Armond, G. William Jarman, Baton Rouge, La., for plaintiff-intervenors.

John J. McCarthy, Richard A. Scully, William L. Shraberg, Dept. of Justice, Washington, D. C., for defendants.

A. L. Zwerdling, Janet G. Kohn, Larry P. Weinberg; J. Albert Woll, Laurence Gold, Washington, D. C., for defendant-intervenors.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on a motion of over 1200 plaintiffs (seven states and the rest, political subdivisions) and the plaintiff-intervenors, the Louisiana Municipal Association and seventy-four Louisiana municipalities, for a preliminary injunction to enjoin the defendants from implementing the Unemployment Compensation Amendments of 1976. These Amendments would require the state and local governments to finance unemployment benefits for these governments' former employees. This litigation is of monumental significance because the allegations indicate that the denial of the injunction may result in the firing of 100,-000 state and local government employees and possibly the curtailment of some vital government services, while the granting of the injunction may result in some 2 million state employees and hundreds of thousands of local government employees being unable to obtain unemployment compensation should they become unemployed.

For the reasons hereinafter stated, the Court will deny the motion for a preliminary injunction. Upon consideration of all the memoranda filed, the affidavits, and the lengthy hearing held on the motion, the Court, under Fed.R.Civ.P. 52(a) and 65(d), makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. Plaintiffs challenge the requirements of Pub.L.No. 91–373 and Pub.L.No. 94–566, as amended by Pub.L.No. 95–19 ("challenged Amendments") which require that plaintiffs, beginning January 1, 1978, assume the financing of unemployment benefits for their former employees. Plaintiffs assert that these statutes trespass upon the state's sovereignty in violation of the tenth amendment to the Constitution.

2. Plaintiffs remain, even under the challenged amendments, immune from the Federal unemployment payroll tax, 26 U.S.C. § 3301.

3. However, failure of state and local governments beginning January 1, 1978 to enact conforming legislation approved by the defendant Secretary of Labor, 26 U.S.C. § 3304, results in the denial of a tax credit, 26 U.S.C. §§ 3301, 3302, against the Federal unemployment payroll tax—collected by the defendant Commissioner of Internal Revenue—on private employers within a nonconforming state.

4. The state must, under the challenged amendments, forward funds to the defendant Secretary of the Treasury to be held in the Federal Unemployment Trust Fund.

5. Beginning January 1, 1978, plaintiffs may, if they enact conforming legislation, need to set aside tax payments or accrue reserves against reimbursements to finance unemployment compensation benefits for plaintiffs' former government employees; however, any liability for weeks of unemployment prior to July 1, 1978 will be reimbursed by the federal government, 26 U.S.C. § 3304 note.

6. Plaintiff states and local governments often have reached limits set by state constitutions and statutes on incurring new debts and raising new revenues through taxes. If states do enact conforming legislation, these limits *may* induce the states and local governments to raise the needed revenue by curtailing or eliminating government services and by firing government employees. To prevent this, plaintiffs seek this injunction.

7. The issuance of an injunction will injure public employees who may become eligible for unemployment compensation; they will be injured to the extent that state and local laws do not provide for them because the Special Unemployment Assistance program, 26 U.S.C. § 3304 note, by which the federal government has paid for the unemployment compensation of these employees since 1975, will expire on December 31, 1977.

8. Several of the states—most prominently plaintiff State of New Hampshire—have not enacted conforming legislation. The other plaintiff states have enacted legislation which purports to conform to the federal requirements.

9. The consequence—unless an injunction is granted—of a state's failure to enact conforming legislation, is (a) denial of a tax credit against the Federal unemployment payroll tax levied on private employer Federal taxpayers within these nonconforming states, 26 U.S.C. §§ 3301, 3302; (b) shifting of the expenses of administering the state unemployment compensation law to the state treasury; and (c) termination of the present federal reimbursement of one-half of extended benefits (benefits paid to claimants from the 27th through 39th weeks of unemployment).

## II. CONCLUSIONS OF LAW

Prior to discussing the four factors to be considered in determining whether a preliminary injunction should be issued, the Court must first decide whether it even has jurisdiction over this litigation.

█ It appears to the Court at this point in the litigation that the Anti-Injunction Act may bar this action. The Act, 26 U.S.C. § 7421(a), reads in relevant part:

[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The Supreme Court has stated that the terms of this Act are to be given "almost literal effect." *Bob Jones University v. Simon*, 416 U.S. 725, 737, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). Thus far, only two exceptions to the Act have been recognized: (1) the Act does not apply if it is clear that under no circumstances could the Government prevail and equity jurisdiction otherwise exists, *see Enochs v. Williams Packing Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1961); (2) the Act does not apply when there is no access to judicial review, *see Investment Annuity, Inc. v. Blumenthal*, 77–2 U.S.T.C. 88,441, 88,442 (Nov. 9, 1977).

█ In this suit, plaintiffs seek to restrain the defendants from assessing or collecting a tax from the private employers in

the nonconforming states. The refusal of a state to enact the conforming legislation would result in the denial of a tax credit to private employers within that state against their federal unemployment tax. Therefore, the plaintiffs' suit to hold unconstitutional the amendments, and thereby prevent the denial of this tax credit, is in essence a suit to restrain the assessment of a tax. The fact that the claims made by the plaintiffs are of a "constitutional nature . . . is of no consequence under the Anti-Injunction Act." *Commissioner of Internal Revenue v. "Americans United" Inc.,* 416 U.S. 752, 759, 94 S.Ct. 2053, 2058, 40 L.Ed.2d 518 (1974). Furthermore, the exceptions do not apply. First, the Court cannot conclude that under no circumstances could the Government prevail. The fact that equitable jurisdiction may exist, i. e., that the plaintiffs may suffer irreparable injury, is not enough to avoid the effect of the Act. 416 U.S. at 761–62, 94 S.Ct. 2053. Second, unlike *Investment Annuity, supra,* there could be judicial review of this legislation. As long as the state does not enact conforming legislation, the private employers, who will lose their tax credit, will be able to challenge the legislation in a suit for a refund. Moreover, if the state does not enact conforming legislation, the state is entitled to judicial review before the Secretary of Labor's refusal to certify the state is final.[1] Thus, it appears at this stage of the litigation that the plaintiffs' suit is barred by the Anti-Injunction Act and, therefore, it would be improper for this Court to issue a preliminary injunction.

Having found that it is unlikely that the Court even has jurisdiction over this action, it is unnecessary to address the four factors the Court must consider in deciding whether to issue an injunction. However, the Court believes it is important in a case of this magnitude to discuss the four factors, assuming *arguendo* that the Anti-Injunction Act does not bar this action.

▪ In *Virginia Petroleum Jobbers Association v. FPC,* 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958), the court enumerated the factors that must be considered in a suit for an injunction: has the plaintiff made a strong showing that it is likely to prevail on the merits; would the denial of the injunction cause irreparable injury to the plaintiff; would the granting of the injunction cause irreparable injury to the other parties; and where does the public interest lie. The court in *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 182 U.S.App.D.C. 220, 559 F.2d 841 (1977), held that these factors are to be balanced and suggested that an injunction may be denied when, even though the irreparable injury to the plaintiff from such denial may be substantial, the likelihood of success on the merits is minimal. 182 U.S.App.D.C. at 223, 559 F.2d at 844. In light of these precedents, the Court has considered the four factors and finds that, at the present time, the plaintiffs' likelihood of succeeding on the merits is minimal, the irreparable injury to the plaintiffs from the denial of the injunction could have been avoided by the plaintiffs, and the irreparable injury to the defendants—and the public interest—clearly demands that an injunction not be issued.

A. *The Court Finds That It Is Unlikely That The Plaintiffs Will Prevail On The Merits In Light Of Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1936).*

The thrust of the plaintiffs' attack on the 1976 amendments is that Congress has violated the tenth amendment because the amendments infringe upon the sovereignty of the state. Chief reliance is placed upon *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), in which the Supreme Court held that the federal government could not impose man-

---

1. It is unimportant that the plaintiffs have voluntarily chosen to enact the conforming legislation rather than obtain judicial review by refusing to do so. One cannot render an available review procedure an inadequate remedy

(and thereby attempt to circumvent the Anti-Injunction Act) by voluntarily foregoing it. *See Commissioner of Internal Revenue v. "Americans United" Inc.,* 416 U.S. 752, 762 n.13, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).

**1190**

datory minimum wage or hour regulations on the states with respect to their employees. The Court found that these rules violated the tenth amendment because they interfere with "integral governmental functions" of the state and would impair the state's "ability to function effectively in a federal system." 426 U.S. at 852, 96 S.Ct. at 2470. The plaintiffs here argue that the 1976 amendments interfere in this way because they coerce the states into adopting legislation affecting their employees and displacing personnel decisions.

■ The Court finds that *National League of Cities* is distinguishable from the case at bar. The regulations there were mandatory on the states; here, the imposition of an unemployment compensation scheme is at the option of the state. *See State of North Carolina ex rel. Morrow v. Califano,* No. 76–0049, slip op. at 9 n.10 (E.D.N.C. Sept. 22, 1977) (3-judge court). This is crucial because the Supreme Court stressed the fact that under the regulations in *National League of Cities,* the "only 'discretion' left to" the states was how to raise the additional revenue. 426 U.S. at 848, 96 S.Ct. 2465. Furthermore, the Court there stressed several times that the challenged regulations *directly* displaced the state's freedom to structure its operations. Thus, legislation that allows the state a choice—to avoid enacting a scheme that *may* interfere with its sovereignty—does not *directly* interfere with a state's sovereignty and is not in violation of the tenth amendment.[2] In

fact, the 1976 amendments are supportive of the tenth amendment by allowing the states a choice and, thereby, preserving the independence of the state's decision.

■ The plaintiffs attempt to avoid this distinction between the amendments here and those involved in *National League of Cities* by arguing that the state's "choice" is an illusory one. Plaintiffs assert that the states are "coerced" into adopting an unemployment scheme covering former public employees. The Supreme Court in *Steward Machine Co. v. Davis,* 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937), held that the unemployment compensation scheme offered as an option to the states, which was designed to induce the states to enact conforming legislation for *private* employees, did not violate the tenth amendment because the states were *not coerced* into adopting the legislation. The scheme there was virtually identical to that now before the Court, except that Congress, in the 1976 amendments, has required as a further condition for the tax credit to the private employers, that their state bring public employees within the umbrella of coverage of unemployment compensation. However, the same issue of whether the statutory scheme *coerced* the states into enacting the legislation, as was present in *Steward,* is present in the case here. The Supreme Court's discussion of "coercion"[3] is therefore relevant to the likelihood of the plaintiffs' success on the merits.

2. This, of course, assumes that the consequences of not enacting the legislation will not interfere with the states' sovereignty. Here, the consequences of refusing to enact the legislation are a denial of a tax credit to private employers and the loss of some federal funds. *These* consequences do not in any way impair the ability of the state to function effectively in a federal system.

3. The plaintiffs attempt to distinguish the *Steward* case on the basis that the Supreme Court there stated that the states did not complain of coercion. 301 U.S. at 589, 57 S.Ct. 883. The fact that a state chooses to voice objection rather than remain silent while a private employer voices objection, as in *Steward,* should not be determinative of the outcome. This is especially true when the same indicia of coercion as was present in *Steward* exists here. At

the time the case was decided, 35 of the 43 states that had enacted conforming legislation included "self-destruct" clauses. 301 U.S. at 369–70, 57 S.Ct. 883 (Oral Argument of Mr. Sterne). (Self-destruct clauses in state legislation state that if an injunction should issue restraining the enforcement of the federal legislation, this would automatically repeal the state legislation.) Plaintiffs have argued that the self-destruct clauses are indicative of coercion upon the states. Therefore, accepting the validity of the plaintiffs' contention that self-destruct clauses indicate coercion, the Supreme Court was faced with a situation similar to the present one, where several states have also enacted the self-destruct clauses. This was not enough to prove coercion in *Steward* and it is not enough now.

The difficulty with the petitioner's contention [that the state is coerced in violation of the tenth amendment] is that it confuses motive with coercion. "Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed." *Sonzinsky v. United States*, [300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772], *supra*. In like manner every rebate from a tax when conditioned upon conduct is in some measure temptation. But to hold that motive or temptation is equivalent to coercion is to plunge the law in endless difficulties. . . . Nothing in the case suggests the exertion of a power akin to undue influence, if we assume that such a concept can ever be applied with fitness to the relations between state and nation.

301 U.S. at 589–90, 57 S.Ct. at 892. However, the Court did place a limitation upon what Congress could use as a condition; Congress cannot condition a tax credit upon the adoption of a statute "unrelated in subject matter to activities fairly within the scope of national policy and power." 301 U.S. at 590, 57 S.Ct. at 892. Moreover, the Court explicitly stated that inducement does not become coercion when the tax credit will be available "upon the doing of an act that will satisfy the fiscal need." 301 U.S. at 591, 57 S.Ct. at 892.

■ Applying these principles to this case, the Court finds that plaintiffs are not likely to prevail on the merits. Congress's motive in enacting the 1976 amendments—to induce the states to pay for the unemployment compensation of their former employees—should not be confused with coercion. Congress has great latitude in fixing the terms upon which its money allotments (and tax credits) may be conditioned. *See Oklahoma v. Civil Service Commission*, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1946). One limitation, of course, as the Court in *Steward* noted, is that the condition must be within the power of Congress. This Court finds that it is within the power of Congress to attempt to deal with the problems of unemployment by inducing the states to extend unemployment compensation to public employees. Furthermore, Congress does not intrude upon fields foreign to its function by extending this credit to private employers as an incentive to the states to enact legislation that will aid the general welfare. *See Oklahoma v. Civil Service Commission, supra* at 144, 67 S.Ct. 544. Therefore, it appears at this time that plaintiffs will have a difficult struggle to prove "coercion" so as to invoke the tenth amendment violation. Accordingly, it appears unlikely that plaintiffs will prevail on the merits.

**B. *The Plaintiffs Can Avoid Any Alleged Irreparable Injury By Refusing To Enact The Conforming Legislation.***

The plaintiffs allege that if an injunction is not issued, they will suffer irreparable injury in that they will have to pay funds to the federal government, and that they will have to fire employees and/or curtail services in order to raise the needed revenue.

The simple answer to this argument is that none of this alleged irreparable injury need result if the state elects not to enact the conforming legislation. It would then lose some federal grants for administration of its unemployment compensation program, the federal share of certain extended benefits, and the tax credit for its private employers—but it would not have to fire anyone or curtail any services.[4] Furthermore, if a state chose not to enact the legislation, no adverse consequences at all would result until the state received a full judicial determination of the Secretary of Labor's refusal to certify the state. Thus, any injury to the plaintiff would not now be imminent if the state had decided not to enact the conforming legislation.

4. Plaintiffs have alleged that if they refuse to enact the legislation, they will be injured in that the denial of the tax credit will induce private employers to leave the state and other private employers not to move to the state. The Court finds this allegation far too speculative at this time at this stage of the litigation.

Even if a state did choose to adopt the unemployment compensation scheme, the United States will reimburse a state for all liability for unemployment paid for weeks prior to July 1, 1978. Thus, the plaintiffs need not pay any money at the present time, nor will they be liable for any money, until several months hence. In fact, the plaintiffs have not shown that, if they do pay any money to the federal government, they cannot recoup this amount later if they prevail on the merits. As the defendants point out, if plaintiffs are ultimately successful, they can obtain a tax refund and will have suffered no loss of funds. *See* Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Application for Preliminary Injunction, at 35 (Dec. 14, 1977).

Accordingly, the Court finds that any irreparable injury that the plaintiffs may suffer as a result of the denial of an injunction could be avoided by refusing to enact or by repealing the conforming legislation. Furthermore, the amount of money that the states will have to place into the trust will be vastly diminished by the fact that the United States will reimburse much of it for the first year. Moreover, the Court will attempt to resolve this entire issue as soon as practicable so as not to cause any undue injury to the states should they enact the conforming legislation.

C. *The Issuance Of An Injunction Will Deny Unemployment Compensation Benefits To Public Employees And Will Thereby Cause A Substantial Irreparable Injury To The Defendants' Interest And The Public Interest.*

If an injunction is issued, public employees will not be covered under any unem-ployment compensation plan (unless the state has voluntarily enacted legislation to cover them). The reason for this is that until the present time, these employees have been covered by the Special Unemployment Assistance program, funded by the federal government. However, this program, created as a temporary one, will expire on December 31, 1977. Therefore, unless states enact legislation to cover these employees, they will not receive unemployment compensation.

The Court finds that there is a strong public interest in preventing some 2 million state employees and some hundreds of thousands of local government employees from becoming unemployed without economic resources. Lack of such coverage could result in the inability to meet the rising costs of food, clothing, shelter, etc. This would certainly be irreparable injury—to these individuals and to society in general. Thus, the injunction will not be issued at this time.[5]

## III. CONCLUSION

The Court will therefore deny the plaintiffs' and the intervenor-plaintiffs' motion for a preliminary injunction. At this stage of the litigation, it does not appear to the Court that the plaintiffs will be able to maintain this suit because of the Anti-Injunction Act. Furthermore, even if the Act does not bar this suit, it appears unlikely at this stage that the plaintiffs will be able to prevail on the merits. The irreparable injury to the public should an injunction be issued clearly outweighs the avoidable injury which the plaintiffs may suffer if the injunction is granted.

An Order in accordance with the foregoing will be issued of even date herewith.

5. The suggestion has been made, in some of the papers and at oral argument, that the failure to issue the injunction here will result in virtual bankruptcy of some cities and states throughout the country if such entities must pay unemployment benefits to some 2 million state and some hundreds of thousands of local employees who may become eligible. The Court notes these allegations with sadness; this Court has merely done its duty to apply the law in a case of first impression under the tenth amendment to the Constitution. The Court is confident that a concerted effort by federal executive, legislative, and state and local branches of government can and must find a solution to the social and economic problems involving the people and governmental entities which are affected directly and indirectly by the issues raised herein.