C. V. R. Schuyler, as Commissioner of General Services of the State of New York, et al., Plaintiffs, *v.* South Mall Constructors, Defendants.

Third Department, September 19, 1969.

*Louis J. Lefkowitz, Attorney-General (Ruth Kessler Toch* of counsel), for Commissioner of General Services, plaintiff.

*John J. Clyne, County Attorney,* for County of Albany, plaintiff.

*John W. Hacker, Corporation Counsel,* for City of Albany, plaintiff.

*De Graff, Foy, Conway & Holt-Harris* for defendants.

*Per Curiam.* This is an action on submitted facts, commenced pursuant to CPLR 3222, to determine whether a provision in the Deficiency Budget (L. 1969, ch. 1) authorizing the Commissioner of General Services to negotiate a contract for general construction of the Library and Museum superstructure located at the Albany South Mall Project is violative of the State Constitution.

The first issue is whether the enactment contravenes section 6 of article VII which states that " No provision shall be embraced in any appropriation bill submitted by the governor or in such supplemental appropriation bill unless it relates specifically to some particular appropriation in the bill, and any such provision shall be limited in its operation to such appropriation."

Since we are dealing with the problem of construction of a constitution, some general rules relating thereto might be briefly stated. A statutory enactment must be read in the light of its history and purpose (*Matter of Frasch,* 245 N. Y. 174, 180). The words of a statute are to be construed with reference to the subject matter and the object sought to be obtained and that construction is to be preferred which furthers the object, spirit and purpose of the statute (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 96). So, too, in construing our Constitution, its spirit and purpose should be considered (*Matter of Carey* v. *Morton,* 297 N. Y. 361).

The predecessor to the portion of section 6 quoted above was section 22 of article III which was added to the Constitution of 1894. Its purpose was to eliminate the legislative practice of tacking on to budget bills propositions which had nothing to do with money matters; that is, to prevent the inclusion of general

legislation in appropriation bills (*People* v. *Tremaine*, 252 N. Y. 27, 48; see 1915 Atty. Gen. 368, 375–377).

The negotiation provision in this case does not violate the spirit or purpose of section 6 of article VII.

Even without reference to the purpose of section 6 of article VII we conclude that the negotiation provision relates specifically to some particular appropriation in the bill within the meaning of section 6. The bill, which is general in character, specifically appropriates over $136,000,000 for the construction of State buildings and other public improvements, including the erection of the building in question. Since the negotiation provision concerns an item which may be constructed with funds from the appropriation, the provision relates specifically to some particular appropriation in the bill, even though the '' particular appropriation '' to which it relates is not precisely itemized in the general appropriation bill.

*People* v. *Tremaine* (*supra*) is distinguishable. There, incorporated in an appropriation bill, was a provision which empowered certain legislative leaders to approve segregations of lump sum appropriations. This was deemed contrary to the constitutional provision prohibiting members of the Legislature from receiving civil appointments. It was argued that since the enactment was germane to the appropriation bill, it complied with section 22 of article III (art. VII, § 6) and was thus constitutional. Section 22 was not held to bar the particular enactment; it was merely held that that constitutional provision could not save the enactment which had already been deemed unconstitutional under another section.

The final issue is whether the negotiation provision is a '' local '' or '' private '' bill and thus in violation of section 15 of article III providing: '' No private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title.''

Determination of this issue requires a brief discussion of the South Mall financing arrangement. The project site was acquired by the State and, pursuant to chapter 152 of the Laws of 1964, conveyed to Albany County in consideration of a 40-year lease and an agreement by the county to issue bonds funding a construction account which periodically repays State '' first instance '' expenditures. Hard dollar State rental payments to the county are calculated to reduce county bond obligations progressively over the lease period. The final retirement of all county bonds will take place concurrently with the lease expiration and the reconveyance of buildings and site by the county to the State. While the finance cycle involves a convey-

ance of title to, and periodic bond flotations by the county, under State tutelage and control, no use or expenditure of funds by the locality is actually involved and the entire operation is underwritten by a State indemnification against any "local" loss or expense. Investors in county bonds rely on the State's credit which stands behind the rental and indemnity provisions of the South Mall agreement.

The word "local" as applied to a bill, act or law means such bill, act or law as touches but a portion of the territory of the State or a part of its people, a fraction of the property of its citizens (*Kerrigan* v. *Force,* 68 N. Y. 381, 383). A local law is entirely confined in its operation to the property and persons of a specified locality whereas a general law embraces persons or property of the people of the State generally (*People* v. *O'Brien,* 38 N. Y. 193, 194).

Under these definitions the negotiation provision pertaining to the new State Library and Museum is not a local law. While for purposes of financing title vests in the County of Albany, the distinctly State character of the Library and Museum with functions long carried on by the State Department of Education, is clear. The building will exist for the cultural and educational benefit of all the people of the State. The fact that the building will lie geographically in the County of Albany has no relevance. Nor does it matter that the residents of the county will be more likely to receive many of its benefits (cf. *Ferguson* v. *Ross,* 126 N. Y. 459, 464). In that respect it is no different from the "State Office Campus" or other public buildings of the State situated in the City of Albany, the State Capital. The negotiation provision, therefore, is not a local law within the meaning of section 15 of article III of the State Constitution.

Since the provision does not violate the State Constitution, we sustain the validity of the statutory provision pursuant to which the present contract was negotiated and direct that judgment be granted for the plaintiffs.

HERLIHY, Acting P. J., REYNOLDS, STALEY, JR., COOKE and GREENBLOTT, JJ., concur.

Judgment granted in favor of plaintiffs declaring that the provision contained in chapter 1 of the Laws of 1969, vesting authority in the Commissioner of General Services to negotiate a contract or contracts for the superstructure construction of the State Library and Museum at the Albany South Mall, is valid and not in contravention of the Constitution of the State of New York and, accordingly, that the agreement between the parties of August 18, 1969 is valid and binding, without costs.