Irving **REICHENTHAL** et al., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Patricia Roberts **HARRIS,** Secretary, Department of Health, Education and Welfare, et al., Defendants.

79 C 1632 (JBW).

United States District Court, Eastern District of New York.

May 22, 1980.

Arthur J. Fried, Legal Aid Society, New York City, for plaintiffs.

Edward R. Korman, U. S. Atty., Eastern District of New York by Marilyn Go, Asst. U. S. Atty., Brooklyn, N. Y., Robert Abrams, Atty. Gen. of the State of New York by Stephen M. Jacoby, Amy Juviler, Asst. Attys. Gen., New York City, for defendants.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Plaintiffs, poor people who are elderly, blind and disabled, seek additional monthly payments from the state and declaratory, injunctive and monetary relief against the Secretary of Health, Education and Welfare and the Director of New York State's Department of Social Services. They allege that the Secretary has not promulgated required regulations to rectify violations of federal laws by the Director and New York State. 42 U.S.C. § 1382g. Claims of denial of substantive and procedural due process and of equal protection are also made. All parties move for summary judgment.

For the past several years, as the federal government increased Supplementary Security Income Program (SSI) benefits to account for inflation, the state decreased its share of monthly payments to plaintiffs, resulting in an unchanged total monthly check to the recipients. Since 1975, the last time members of the class received an increased monthly check, the cost of living has risen 77%. Even in 1975 people who make up this class were supported at a bare subsistence level.

The federal government appears to have been somewhat more compassionate than the state. But New York has not, with a minor exception discussed below, reduced its total expenditures for all SSI recipients. It has utilized increased federal funds to raise the monthly payments to those even worse off than plaintiffs. This represents a legislative-executive judgment on the allocation of resources. As demonstrated below, no violation of the federal Constitution has occurred. Whether there has been a violation of federal statutes by the state depends on interpretive regulations not yet extant because the Secretary has neglected to adopt them. While the court recognizes plaintiffs' urgent need for assistance, the only relief it can afford is to order the Secretary to take immediate steps to determine the validity of New York's actions under applicable federal statutes.

## I. *STATUTORY BACKGROUND*

Prior to 1974, individuals who were aged, blind or disabled were eligible to receive public assistance under state categorical programs of Aid to the Aged, Blind and Disabled ("AABD") that had been approved by the Secretary pursuant to the Social Security Act. New York State had such a program. Congress enacted the SSI plan effective January 1, 1974, to replace the AABD programs and provide cash benefits to individuals of low income and limited resources who are blind or disabled or have reached sixty-five. Pub.L. No. 92–603, 42 U.S.C. §§ 1381 et seq. This scheme includes, but is not limited to, individuals who had been receiving benefits under AABD.

Uniform criteria and uniform payment amounts were established in place of the prior multiplicity of categorical eligibility requirements and payment amounts of the state operated systems.

Recognizing regional variation in living costs, Congress authorized each state to supplement the federal standard payment amount at whatever level it deemed appropriate. 42 U.S.C. §§ 1382e, 1382a(b)(6). A state can, as New York has, enter into an agreement to have the federal government administer the "optional" supplementary payments monthly by adding it to the single federal SSI check mailed by Washington. 42 U.S.C. § 1382e(d). Federal administration of the state optional supplementary payment is governed by the federal rules and regulations in effect for the SSI program. 42 U.S.C. § 1382e(b)(2) and 20 C.F.R. § 416.2005(d).

In addition to optional state supplementation, there are circumstances under which a state is required to make supplementary payments. Persons who were eligible for and receiving state-federal public assistance under AABD prior to the inception of SSI, were transferred to the federal SSI program, 42 U.S.C. §§ 1382c(a)(2) and (a)(3)(E), and were not required to file an application in order to establish their status as eligible individuals. An individual who had received assistance under a state plan for December, 1973 was "grandfathered" into the SSI program and was entitled to receive SSI benefits at a rate, including other income, not less than the total benefits and other countable income, that such an individual received under the repealed state programs in December, 1973. P.L. 93–66, 212(a); 42 U.S.C. § 1382(h).

Those whose AABD benefits were converted to the SSI program are entitled to receive the flat federal amount plus either the optional state supplementation or the mandatory state supplementation, whichever is greater. P.L. 93–66, 212(a)(3)(A); 42 U.S.C. § 1382(h). Federal portions of SSI benefits are adjusted periodically to reflect increases in the cost of living. 42 U.S.C. § 1382f. New York complies with

the grandfather clause by providing a guarantee of an additional state payment in an amount which, when added to the federal benefit and other countable income, is equal to the individual's December, 1973 AABD cash grant. New York Social Services Law § 210. As the federal portion of plaintiffs' SSI increases, the state supplementary payment for these individuals decreases.

Because the federal statute did not require maintenance of a 1973 level to non-grandfathered individuals, these other recipients are said to receive "optional" payments. These monthly payments are generally below those of former AABD recipients. New York has revised its statutes annually to "pass along" the federal cost of living adjustments to recipients of optional payments; as a result their payments have gradually risen to a level approaching plaintiffs'. Stipulation ¶ 12.

In 1976, Congress enacted an amendment designed to encourage states to pass along to all SSI beneficiaries as a class all federal cost of living adjustments. It conditioned state eligibility for Title XIX participation (Medicaid) on there being in effect an agreement with the Secretary to continue to make optional and mandatory supplementary payments and to maintain such payments to individual SSI beneficiaries at levels no lower than the total (state plus federal) payments to any individual in effect in December, 1976. Alternatively, the state could maintain its total expenditures for all SSI recipients at an annual rate no lower than that of the prior year. 42 U.S.C. § 1382g provides:

> Payments to State for operation of supplementation program; eligibility, agreement with Secretary; levels of supplementary payments
>
> (a) In order for any State which makes supplementary payments . . . on or after June 30, 1977, to be eligible for payments pursuant to subchapter XIX of this chapter with respect to expenditures for any calendar quarter which begins—
>
> > (1) after June 30, 1977, or, if later,
> > (2) after the calendar quarter in which it first makes such supplementary payments,

> such State must have in effect an agreement with the Secretary whereby the State will—
>
> > (3) continue to make such supplementary payments, and
> > (4) maintain such supplementary payments at levels which are not lower than the levels of such payments in effect in December 1976, or, if no such payments were made in that month, the levels for the first subsequent month in which such payments were made.
>
> (b) The Secretary shall not find that a State has failed to meet the requirements imposed by paragraph (4) of subsection (a) of this section with respect to the levels of its supplementary payments for a particular month or months if the State's expenditures for such payments in the twelve-month period (within which such month or months fall) beginning on the effective date of any increase in the level of supplemental security income benefits pursuant to section 1382f of this title are not less than its expenditures for such payments in the preceding twelve-month period.

The upshot of the statutory pattern is that the Secretary will not find the state out of compliance with the requirement to maintain its December, 1976 levels of payments to individual grandfathered recipients if the state's total SSI supplementation expenditures for the twelve-month period following a federal SSI cost-of-living increase are not less than the state's total SSI supplementation expenditures for the previous twelve month period. 42 U.S.C. § 1382g(b). Federal medicaid payments to New York are so great—a threatened cutoff of $1,879,107,000 for 1979 and some two billion dollars for 1980 is involved—that from a practical point of view the state has no real option; it must meet federal requirements.

## II. *NEW YORK STATE SUPPLEMENTARY SSI EXPENDITURES*

New York State has elected to use funds generated by federal cost of living increases

to the grandfathered class for the benefit of other SSI recipients receiving optional supplementation, who were receiving less each month than plaintiffs. There was, nonetheless, a decline of some $7,500,000 between the state's actual expenditures for supplementary payments to SSI recipients between fiscal years 1976–77 and 1977–78, although the actual and projected expenditures for 1978–79 and 1979–80 were greater than for 1976–77.

EXPENDITURES BY NEW YORK STATE FOR
SUPPLEMENTARY PAYMENTS TO
ALL SSI RECIPIENTS

| PERIOD | | AMOUNT |
| --- | --- | --- |
| January 1, 1974 – June 30, 1974 | State actual | 100,485,672 |
| July 1, 1974 – June 30, 1975 | State actual | 196,562,591 |
| July 1, 1975 – June 30, 1976 | State actual | 243,454,510 |
| July 1, 1976 – June 30, 1977 (Base year under 42 U.S.C. § 1382g) | State actual | 222,571,948 |
| July 1, 1977 – June 30, 1978 | State actual | 214,891,603 |
| July 1, 1978 – June 30, 1979 | State actual | 225,327,623 |
| July 1, 1979 – June 30, 1980 | State projected | 235,000,000 |

The Secretary has not yet decided whether there was a sufficient maintenance of expenditures for the twelve-month period, July 1, 1977–June 30, 1978, to comply with the statute. Since regulations on the administration of section 1382g have not been promulgated and since a final audit has not yet been conducted pursuant to such regulations, this determination, the Secretary argues, cannot be made at this time.

## III. *THRESHOLD CONSIDERATIONS*

### A. *Subject Matter Jurisdiction*

■ Since sections 1343 of Title 28 and section 1983 of Title 42 do not give this court jurisdiction over claims concerning state violations of the Social Security Act, *Chapman v. Houston Welfare Rights Organization et al.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), jurisdiction is predicated on section 1383(c) of Title 42, providing for judicial review of a final decision of the Secretary, reached at the end of the administrative review process. See also 42 U.S.C. § 405(g). Two conditions must be satisfied. First, a claim for benefits must have been presented to the Secretary. Second, there must have been a final decision after a hearing. Only the first condi-

tion is mandatory; the second—the requirement that the claimant exhaust his administrative remedies—can be waived either by the Secretary, *Mathews v. Diaz*, 425 U.S. 67, 96 S.Ct. 1883, 1889–1890, 48 L.Ed.2d 478 (1976), or by the court, *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 899–900, 47 L.Ed.2d 18 (1976).

■ The nonwaivable requirement has been satisfied in this case with respect to both named individual plaintiffs and the unnamed members of plaintiff class. All plaintiffs are SSI recipients who have filed claims with the Secretary and each has arguably suffered a reduction or termination of part of the monthly benefits paid with state funds by the Secretary. This suit was not filed until named plaintiffs Reichenthal and Murtagh had tried for one-and-one-half years to obtain an administrative determination from HEW that they were entitled to awards pursuant to section 1382g. These circumstances satisfy the requirement that the claim for benefits be presented to the Secretary. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (plaintiff had presented his claim to the Secretary in his answers to a state questionnaire and in his letters in response to the tentative determination that his disability had ceased). Even if the unnamed members had failed to properly "present" their claims to the Secretary, the relief granted here, requiring HEW to promulgate regulations concerning the maintenance of expenditures under section 1382g, would not be affected.

The second requirement, finality, has been satisfied by a combination of exhaustion of administrative remedies and implied waiver. Mr. Murtagh, a member of the plaintiff class, challenged, at each administrative level, the reduction of the state share of his SSI payments in an amount equal to federal cost-of-living increases. The Secretary determined that the reduction was not an error of law or an abuse of discretion. A suit challenging that determination was commenced in this Court and dismissed on the ground that the plaintiff was a member of the class in the instant

action. Any other member of the class proceeding by the same route would, defendants agree, be treated in the same way. The plaintiffs have therefore exhausted their administrative remedies concerning the question of whether New York may comply with section 1382g by maintaining its expenditures under the SSI program rather than by passing along the cost-of-living adjustment provided by Congress to the grandfathered recipients.

Plaintiffs have been unable to obtain administrative review of their alternative allegation that New York failed to maintain the state's share of SSI expenditures from July 1, 1977 to June 30, 1978. Although HEW urges that plaintiffs' claims should be dismissed on the ground that primary jurisdiction is in the administrative agency, the Secretary's posture in this case is tantamount to waiver. Here, the Secretary has stipulated that New York used funds made available by cost-of-living increases to grandfathered recipients to increase the level of benefits given to optional recipients in the program. The amount of New York's expenditures during each year of the program is not disputed. See table, supra. The Secretary has failed to promulgate regulations against which New York's compliance with section 1382g may be ascertained even though this section was enacted years ago and the Secretary is aware that several other states allegedly are in violation of the section. No regulations are in sight and no way has been suggested for plaintiffs to obtain administrative review of their claim that New York failed to maintain its expenditure during fiscal year 1977–78.

▪ Exhaustion of administrative remedies may be waived by the Secretary by stipulation, Mathews v. Diaz, 426 U.S. 67, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976); inaction, cf. White v. Mathews, 559 F.2d 852, 856 (2nd Cir.), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1979) (suit seeking to compel Secretary to determine disability eligibility within reasonable time entertained under 28 U.S.C. § 1361); necessity, Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976) ("defer-

ence" to agency judgment on finality may be outweighed "where a claimant's interest in having a particular issue resolved promptly is so great"); Jones v. Califano, 576 F.2d 12, 18 (2nd Cir. 1978); or the adoption of a "final" position before completion of the entire administrative review process, Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975); Liberty Alliance of the Blind v. Califano, 568 F.2d 333, 344–5 (3rd Cir. 1977); cf. Davis, Administrative Law of the Seventies, § 20.00 et seq. (1976).

The Secretary takes the position that there are no factual issues in dispute, that she will not take any further administrative action and that she has no intention of promptly promulgating regulations. The Secretary has thus waived the exhaustion requirement by stipulation, inaction and the adoption of a final position that would render delay for further administrative review futile. As in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976),

No interest of the agency requires the multiple exhaustion of the same issue by (elderly and disabled) class members, who are obviously in strained circumstances and unusually dependent upon the benefits in question. The plaintiffs' interest in prompt resolution of the legal issue is clear. The judiciary's interest in avoiding multiple applications for review is equally clear.

Liberty Alliance of the Blind v. Califano, 568 F.2d 333, 346 (3rd Cir. 1977).

"For poor and disabled people, time is a precious commodity even when the amounts involved are small." Jones v. Califano, 576 F.2d 12, 20 (2nd Cir. 1978). While the Secretary delays, the class is quickly diminishing by death, relocation, transfer to other forms of relief and for other reasons.

In view of Title 42 jurisdiction, there is no need to consider the strong alternate Title 28 ground; the relief sought is in the "nature of mandamus to compel an officer . . . of the United States to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. White v. Mathews, 559 F.2d 852, 856 (2nd Cir.), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1979).

### B. *Standing*

■ Defendants suggest that plaintiffs have failed to satisfy constitutional and prudential requirements for standing. They maintain that plaintiffs have suffered no injury, that their claim is a generalized grievance shared by all citizens, and that their interests are not within the zone of interests to be protected by the statutory provision. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).

These contentions are without merit. Plaintiffs state supplementary SSI benefits were reduced. Their claim is that this injury was caused by either HEW's misapplication of the statute coupled with New York's misuse of SSI-related funds or HEW's failure to determine if New York was maintaining its expenditures for SSI. A reduction in benefit payments to elderly and disabled persons, almost wholly dependent on public assistance, constitutes an injury. This is not a generalized grievance; plaintiffs have established that only those who were grandfathered into the supplementary SSI program suffered this reduction. Finally, the interest sought to be protected, the pass along of Congressional cost-of-living increases, is precisely the interest that Congress sought to protect in enacting section 1382g. 122 Cong.Rec. 28288 (August 30, 1976). Plaintiffs have standing.

## IV. *MERITS*

### A. *Procedural Due Process*

■ In addition to challenging the Secretary's interpretation and administration of section 1382g, plaintiffs claim they were denied rights guaranteed by the due process clause of the fifth and fourteenth amendments and the Social Security Act and its regulations when the defendants reduced or terminated the state supplementation component of their SSI benefits without providing notice or an opportunity for a hearing. The figures on plaintiffs' monthly checks show that plaintiffs have continued to receive at least the same amount of benefits they did in December, 1973. There has only been a change in the allocation of federal and state contributions. Thus, there has been no actual reduction of monthly payments sufficient to trigger the notice provisions of the Social Security Act and its regulations. 42 U.S.C. § 1382(c)(1); 20 C.F.R. § 416.1336. *Cf. Eder v. Beal*, 609 F.2d 695 (3rd Cir. 1979) (policy favoring prior notice to social security recipient of agency action is triggered only upon actual termination, suspension or reduction of benefits already being received). In any event, individual hearings could serve little purpose since it is the interpretation of a statute applicable to all beneficiaries that is involved and there are no factual determinations that need to be made for each claimant.

### B. *Substantive Due Process and Equal Protection*

■ Nor is there any denial of substantive due process or equal protection. The Supreme Court has thus far refused to approve a constitutional theory mandating general equality of opportunity and has rejected the concept of minimum levels of resources and income as a constitutional guarantee. *Cf. e. g., San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1973) (disadvantages in education predicated upon wealth do not create suspect classification and do not evoke strict scrutiny under the equal protection clause); *Lindsey v. Normet*, 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972) (the Constitution does not guarantee access to dwellings of a particular quality); *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970) (denying strict scrutiny of state welfare scheme despite its involvement with "the most basic economic needs of impoverished human beings"); Gunther, Constitutional Law, 840–874 (9th ed. 1975); Tribe, American Constitutional Law, §§ 16–33, 16–50 (1978); Ely, Forward: On Discovering Fundamental Values, 92 Harv.L. Rev. 5, 37–38 (1978) (jobs, food or housing not fundamental).

This is an inappropriate case for the application of any new approach to constitutional rights based on concepts of economic equality or minimum guarantees of the wherewithal for life. The money "saved" by the State's failure to give plaintiff class the benefit of federal cost-of-living increases is being used to increase state supplementation for those who were receiving even lower monthly SSI payments than are plaintiffs. Given the present state of the law, and the extremely limited power of the courts to order new funds raised by taxes and applied to social welfare programs, the court would be in an untenable position were it to compel the state to redistribute available state funds from the poorest to the next poorest. The excruciating problem of dividing resources among various social classes is one that must, under present constitutional doctrine, be left to the legislature and appropriate administrative agencies. It cannot be dealt with, in a case such as the one before us, as a constitutional-substantive issue.

### C.  *Right of New York to Allocate its Supplementary SSI Funds Among all SSI Recipients*

Plaintiffs' contention that section 1382g compels New York to maintain its supplementation of each of their SSI benefits is contrary to both the plain words of the statute and its legislative history. The state has an alternative. It must either 1) maintain its share of each beneficiary's December, 1976 level of supplementation or 2) maintain its total expenditures from year to year. New York has chosen the second option.

If the statute were held to require the state to supplement payments to all recipients equally, then, as the number of participants grew, the state would be forced to increase its total contribution. Legislative history of section 1382g evidences Congressional concern over the decrease of state contributions, but contains many assurances that no increase in total state costs would be required. For example, Representative Heckler declared during the debate in support of the provision:

> The . . . amendment will not require States to spend more for SSI, it merely prevents them from reducing expenditures when the Federal minimum benefit level is raised.

122 Cong.Rec. 28282 (August 30, 1976). And Representative Holtzman noted:

> Our amendment would require that Federal cost-of-living increases be passed through to the aged, blind, and disabled poor. It would not require a State to increase its expenditures on SSI payments—indeed the amendment specifically provides that a State shall not have to spend more on SSI supplements in a particular year than it spent in the preceding one.

122 Cong.Rec. 28284 (August 30, 1976).

### D.  *Reduction of Total New York SSI Expenditures. Absence of Regulations.*

■ New York has, as already noted, chosen to comply with section 1382g by maintaining its level of total expenditures for the SSI program. The figures stipulated to by the parties, however, indicate that during the first year this aspect of the program was in effect, New York State's SSI supplemental expenditure appears to have fallen below the required level. *See* Table, *supra.* During 1977–78, New York's expenditures decreased from the previous fiscal year by about three-and-one-half percent.

Although plaintiffs would have the court award them part of these "unspent" funds in the form of a cost-of-living increase or find New York in violation of section 1382g and order the cutoff of Medicaid funds, the granting of such remedies would be an improper judicial usurpation of the Secretary's role in the administration of this statute and, more importantly, may unnecessarily impose draconian punishment upon hundreds of thousands of New Yorkers in need of Medicaid.

Although the parties have reached agreement concerning the raw data on New York's expenditures, the Secretary has not

yet determined in detail which of the State's expenditures are to be included. New York may be found in compliance with the section once regulations are in place. The Secretary may determine that even if New York did not precisely comply, reasonable efforts were made and the shortfall was *de minimus*. In light of subsequent over-expenditures, the Secretary might well find New York in substantial compliance.

Great potential hardships result from the Secretary's failure to promptly face decision-making responsibilities mandated under the statutory scheme. *Cf. White v. Mathews*, 559 F.2d 852, 858 (2nd Cir.), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (administrative delay in processing requests for disability benefits detracts from the effectiveness of the program); Note, Judicial Resolution of Systemic Delays in Social Security Hearings, 79 Col.L.Rev. 959, 982 (1979). As a result of the Secretary's failure, New York and other states are unable to plan their budgets and adequately protect themselves from a possible cutoff of Medicaid funds. *See Oklahoma v. Harris*, 480 F.Supp. 581, 588 (D.D.C., 1979). The elderly and disabled are severely pressed by inflation and should at least know what they are entitled to receive.

■ HEW should be given an opportunity to exercise its expertise and develop section 1382g regulations. Elaboration of what is required for maintenance of total expenditures by the Secretary is the preferable solution. *Blankenship v. Secretary of HEW*, 587 F.2d 329, 336 (6th Cir. 1978); *Nader v. F. C. C.*, 520 F.2d 182, 206 (D.C. Cir. 1975). The court has power to compel agency action required by statute, even where compliance may require the distasteful action of cutting off state funds. *See, e. g., Brown v. Weinberger*, 417 F.Supp. 1215 (D.D.C.1976); *Adams v. Richardson*, 356 F.Supp. 92 (D.D.C.), *aff'd*, 480 F.2d 1159 (D.C. Cir. 1973).

## V.  CONCLUSION

The Secretary of HEW is ordered to exercise rulemaking power by promulgating rules and regulations establishing the criteria for compliance with section 1382g within ninety days. The Secretary shall promptly determine whether New York State has complied and take appropriate action should New York be found in violation of the statute.

So ordered.