OPINION OF THE COURT
Andrew V. Siracuse, J.
The plaintiffs in this declaratory judgment action seek to invalidate a change in the way New York State Home Relief benefits are calculated for "mixed households” in which one member receives Supplemental Security Income. By permission and consent the plaintiffs’ motion for a preliminary injunction was converted into a motion for summary judgment and the defendants’ answer treated as a cross motion for summary judgment. The plaintiffs’ request for class certification is consequently mooted.
Pursuant to the terms of a temporary restraining order signed by the Hon. Thomas A. Stander on December 20, 1991, and since continued, the named plaintiffs’ benefits and, by stipulation, those of certain other mixed households have not been reduced pending resolution of this action.
FACTUAL BACKGROUND
All of the plaintiffs are members of households in which one person receives Supplemental Security Income (SSI) and the other is dependent on Home Relief (HR). The Supplemental Security Income program (42 USC § 1382 et seq.) was established by the Social Security Amendments of 1972 (Pub L 92-603, 86 US Stat 1329) to provide assistance to aged, blind and *633 disabled individuals whose income and resources were below a certain level. SSI benefits in the early years of the program were below those under New York’s own program for aid to the disabled, which SSI replaced. New York was required by the act to supplement these benefits in order to maintain those covered under the former program at the same level of support. New York also enacted a reduced supplement for those newly eligible for relief (Social Services Law § 209; L 1974, ch 1080; see generally, Reichenthal v Harris, 492 F Supp 637 [ED NY]). When this action was commenced the monthly Federal SSI benefit for an individual was $422. New York State added $86 for "non-grandfathered” SSI recipients living alone and $23 for those living with another, the category to which the plaintiff recipients belong.
Home Relief under the New York Social Services Law (§ 158 et seq.) is a general assistance program for those whose financial needs are not met by other programs. Benefits are based on defined income requirements for personal needs, home energy and heat and shelter (18 NYCRR 370.4 [a], referring to 18 NYCRR part 352) balanced against the income and resources available to the potential recipient.
From the inception of the SSI program, SSI benefits were deemed "invisible” for HR purposes; that is, no person’s SSI income would be considered when evaluating the rest of the household for Home Relief. (Under Social Services Law § 158 [a], SSI recipients are ineligible for Home Relief; this ineligibility does not extend to their spouses or dependents.) The 1991-1992 Aid to Localities Budget (L 1991, ch 53), however, authorized the Commissioner of the Department of Social Services to promulgate emergency regulations to reduce fraud and other overpayments and to revise "budget methodology for mixed households”, thus containing costs.
Effective July 19, 1991, therefore, the Commissioner amended 18 NYCRR 352.2 (b) so that a household member’s SSI income was only invisible for recipients of Aid to Families with Dependent Children or Emergency Assistance to Needy Families with Children. This emergency rule change lasted until December 24, 1991, when a permanent rule change following due notice became effective.
The difference in benefit levels under the old and new rules is substantial, since under the old rules the household received SSI at the lower but still significant level for an individual living with another plus Home Relief for an indi *634 gent single person. The various plaintiffs claim that their benefits are to be reduced by at least 25% and, in one case, by almost 50%.
THE PREEMPTION CLAIM
The heart of the plaintiffs’ case is the claim that the State’s inclusion of SSI income in determining a household’s Home Relief benefits is in conflict with the Social Security Act and is thus invalid under the Supremacy Clause of the United States Constitution (art VI, § 2).
There is no specific preemption clause in the Social Security Act which addresses SSI. The plaintiffs, though, point to several provisions which they claim require that SSI income be disregarded in calculating all other benefits.[1] In particular, they cite 42 USC § 602 (a) (24), which requires that, for the purposes of Aid to Families with Dependent Children (AFDC), an individual receiving SSI payments must be considered a member of a separate household when determining the family’s eligibility and level of benefits. The plaintiffs claim that this demonstrates an intent on the part of the Federal Government that SSI income be used solely for the eligible beneficiary, and that State laws or rules that count it as family income are invalid because they conflict with that intention.
This argument asserts an implied preemption of the New York rule by the SSI provisions of the Federal code. Viewed in this light, the plaintiffs’ argument must fail, not least because the provision in question, while contained in the Social Security Amendments of 1972 (Pub L 92-603, § 414 [a], 86 US Stat 1492), arises from the terms of the AFDC Act and out of consideration of the needs of AFDC recipients.
While a Federally mandated program, AFDC is State-administered and partially State-funded. Section 602 sets out requirements for State programs, and the paragraph in question mandates that States "provide that if an individual is receiving benefits under title XVI [SSI] * * * then, for the period for which such benefits are received * * * such individ *635 ual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this title [AFDC] and his income and resources shall not be counted as income and resources of a family under this title” (42 USC § 602 [a] [24]). Those courts that have considered this section have applied it in two contexts. Some Federal courts, considering the section as it affected retroactive benefits under SSI paid to one who has been receiving AFDC, have held that "[t]he purpose of the statute is to prevent double-dipping by eliminating the overlap between (1) an individual’s SSI benefits and (2) the portion of AFDC benefits 'attributable’ to the individual (i.e., the amount of AFDC benefits which the individual’s family receives as a result of that individual’s presence in the assistance unit)” (Fitzgerald v Schweiker, 538 F Supp 992,1001 [D Md 1982]; see also, Wilson v Heckler, 580 F Supp 1387,1392 [DC 1984]). That is, a household cannot receive AFDC benefits for a member who receives SSI.
On the other hand, the section has also been invoked to forbid consideration of a family member’s SSI benefits when determining the AFDC eligibility or benefit level of the rest of the family (see, e.g., Matter of Reeves v Fahey, 65 AD2d 633, lv denied 47 NY2d 706; Matter of Barton v Lavine, 54 AD2d 350; Matter of Schimmel v Reed, 50 AD2d 1085, affd 40 NY2d 887; Folsom v Blum, 87 FRD 443 [SD NY 1980]; Gleim v Commonwealth of Pa., Dept. of Pub. Welfare, 48 Pa Commw 356, 409 A2d 951). Thus, SSI income is of no significance in determining if the other members of a household are eligible for AFDC.
Were it necessary to choose between these two interpretations the latter would be more persuasive. The exclusion of the SSI recipient’s resources and non-SSI income from the family’s resources and income would be pointless if the section aimed solely at deterring "double-dipping”. There is, moreover, a clear policy basis for this interpretation. The aim of AFDC is to benefit children in households without breadwinners (Carleson v Remillard, 406 US 598, 603; King v Smith, 392 US 309, 313; Matter of Gunn v Blum, 48 NY2d 58, 63). The legislation has, as its general purpose, the welfare of children otherwise unprovided for, and attempts to maintain them in their homes (42 USC § 601). It is specifically aimed at "[n]eedy children * * * who are * * * [u]nder the age of 18 * * * [; are d]eprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or unemployment of a principal *636 earner, and [are ljiving in the home of a parent or of certain relatives” (45 CFR 233.10 [b] [2] [ii] [a]), and it also benefits the parent or caretaker relative of the dependent child (45 CFR 233.10 [b] [2] [ii] [b]). Subdivision (a) (24) ensures that such children are not penalized by the presence of a parent, relative or sibling who is eligible for SSI by reason of his own incapacity.
Thus, the "section speaks only to an individual’s eligibility for AJFDC benefits” (Commonwealth of Pa. v United States, 581 F Supp 1238, 1240 [MD Pa 1984]) and, for example, places those with an incapacitated parent supported by SSI on the same footing as one whose parent is dead or has abandoned the family, and who thus represents no drain on the family’s budget. It does not reflect any legislative intent that SSI income be reserved for the immediate beneficiary’s use, or that such monies cannot be used to benefit the recipient’s dependents.
It is not necessary to decide between the two interpretations of subdivision (a) (24) though; neither one supports the plaintiffs’ position. If the subdivision is aimed at "double-dipping” it clearly has no application to the issue at hand. If, as seems more likely, it seeks to hold AFDC recipients harmless when a sibling or parent receives SSI benefits, the legislative intent revealed by the section concerns the rights of the former — not the status of the latter.
The other provisions cited by the plaintiffs also fail to establish a legislative intent that SSI income be reserved solely for the beneficiary’s use. While it is true that SSI income is protected from garnishment or other legal process, so are all forms of Social Security payments (see, e.g., 42 USC § 407 [a]; Philpott v Essex County Welfare Bd., 409 US 413, 417; Matter of Sharlot v Sharlot, 110 AD2d 299). This argument claims too much; the plaintiffs do not and cannot assert that old-age benefits, for example, must also be invisible in calculating other benefits. Finally, no supremacy argument can be constructed from the representative payee’s liability for misappropriation of the beneficiary’s funds (20 CFR 416.635, 416.640-416.641) or from the requirement that States pass on cost-of-living increases in Federal SSI funding to recipients and not fund the mandatory supplements to SSI from those increases (42 USC § 1382g).[2] These provisions arise *637 from nothing more than the representative payee’s fiduciary duty and the Federal Government’s determination that its SSI appropriation be spent for its intended purpose.
Thus, the plaintiffs have failed to establish that Federal law requires the invisibility or disregard of SSI benefits for any purpose but AFDC calculations, and their challenge to the rule change on this ground must fail.
THE STATE CONSTITUTIONAL MANDATE TO AID THE NEEDY
The plaintiffs next claim that the inclusion of SSI income in determining a household’s HR benefits violates the State’s affirmative duty to aid the needy (NY Const, art XVII, § 1; see generally, Tucker v Toia, 43 NY2d 1). Citing Matter of Lee v Smith (43 NY2d 453), the plaintiffs claim that the rule change deprives them of a constitutionally mandated level of support by forcing them to devote a portion of their income to their spouse’s needs.
The plaintiffs’ benefits under the new rule would be identical to those of a household of the able-bodied supported by Home Relief, but they assert that the State Legislature has set a higher level of support for the aged, blind and disabled. However, neither statute nor case law suggests a constitutional mandate for such a preference. The present-day relationship between SSI and HR benefits is an artifact of legislative histories and inflation. The State supplement to SSI benefits was enacted in 1974 because SSI payments at the inception of the program were less than those provided under the earlier State program (see, Social Services Law § 209) and were thought to be inadequate in any event (see, Governor’s Mem approving L 1974, ch 1080-1081, 1974 NY Legis Ann, at 434). Since SSI payments are currently indexed for inflation (42 USC § 1382f; 20 CFR 416.405) and the increase is generally passed on to recipients rather than absorbed in the State supplement (42 USC § 1382g), the income of SSI beneficiaries has since risen steadily. Benefits under State assistance programs, which are not indexed, have grown at a much lower rate.[3]
*638 Thus, the petitioners in Matter of Lee v Smith (43 NY2d 453, supra), suing in the mid-1970’s, were seeking to receive Home Relief benefits in order to bring them up to the income level of the able-bodied. They challenged the constitutionality of a clause in Social Services Law § 158 (a) which prohibits SSI recipients from receiving HR. The Court of Appeals noted that "in most cases the SSI payment exceeds the amount an individual would receive if he were dependent on home relief or any other category of public assistance. But, in many cases, the effect of the statutory scheme is that those who are unable to support themselves because of age, or disability or blindness receive less public assistance than other needy persons who do not suffer from these disabilities” (43 NY2d, at 458-459, supra). The Court held that a separate classification for the aged, disabled and blind was not constitutionally offensive in itself, and "if the State’s classification had also recognized their needs at a level equal to or greater than the needs of others generally, the separate treatment would find support in reason and authority” (supra, at 460-461; emphasis supplied). Because the statute resulted in lower benefits for the class, the Court ruled it unconstitutional.
The constitutional requirement thus appears to be met by the maintenance of income at the level provided by Home Relief. The Second Department, in a later case, declined to follow Lee (supra) when the SSI recipient’s benefits had never fallen below the level payable under HR, and its reasoning is persuasive (Matter of Goodwin v Perales, 120 AD2d 527). In the present case, of course, the plaintiffs are objecting to a policy which leaves them with the HR benefits nonmixed households receive.
The plaintiffs’ argument is weakened further by the fact that, in most cases, they have been receiving more under the old rules than they would have if both household members were disabled and receiving SSI as a couple. No matter what policy New York has adopted concerning the special needs of the aged, blind and disabled, it cannot be argued that mixed households are entitled to more assistance than those composed entirely of SSI recipients.
Under the new rule the plaintiffs in this case will continue *639 to receive benefits "at a level equal to * * * the needs of others generally” (Matter of Lee v Smith, 43 NY2d 453, 460-461, supra). Their claimed constitutional entitlement to more is without foundation.
THE VALIDITY OF THE RULE-MAKING PROCESS AND ITS AUTHORIZATION
The plaintiffs also claim that the Commissioner acted beyond his authority and/or in violation of the doctrine of separation of powers in promulgating the rule change and that the authorization in the 1991 Aid to Localities Budget of a revision of budget methodology for mixed households was general legislation in a budget bill, prohibited under article VII, § 6 of the New York Constitution.
Judicial review of a Commissioner’s rule making is very limited: "So long as the construction given the relevant statutes by the commissioner in promulgating these regulations is not irrational or arbitrary, judicial inquiry is foreclosed. But, while the scope of * * * review may be limited, it is not toothless, and administrative rules are not judicially approved in a pro forma manner. The Legislature may constitutionally delegate rule-making authority to an administrative agency only if it furnishes the agency with at least a broad outline within which to act. Certainly, the commissioner has no authority to create rules and regulations without a statutory predicate either express or implied” (Matter of Bates v Toia, 45 NY2d 460, 464). Thus, the Commissioner was empowered to extend State AFDC benefits to prenatal care because Federal funds were available to do so and the Social Services Law authorized him to "make any arrangement which may be necessary to * * * secure for the state the benefits of such federal act relating to aid to dependent children” (§ 358 [1]; see, Matter of Bates v Toia, supra). He was also authorized to reduce Home Relief benefits to individuals receiving lump-sum payments because the AFDC program had been so amended; the mandated amendments to the State program and changes to HR aimed at maintaining "general consistency” between the two programs furnished an implied statutory predicate for the change (Sutter v Perales, 103 AD2d 1029, affd 64 NY2d 1095, for reasons stated below).
In the present case the Commissioner was expressly authorized to contain welfare costs by, inter alia, revising budget methodology for mixed households. This language does not *640 explicitly authorize the exact change made, but it clearly conveys the Legislature’s conclusion that mixed households might be receiving a disproportionate share of welfare funds. The act gives the necessary "broad outline” to the Commissioner, and the rule change was within his powers.
It is also worth noting that the plaintiffs have shown no statutory authorization for the previous rule, though there may have been a general preference that HR administration parallel AFDC policy (see, Sutter v Perales, 103 AD2d 1029, supra). Contrary to the suggestions made by the plaintiffs, the rule change was not an administrative repeal of a legislative enactment.
Finally, the provision in the Aid to Localities Budget was directly related to the function of a budget — the allocation of funds — and did not violate NY Constitution, article VII, § 6. That section was adopted "to eliminate the legislative practice of tacking on to budget bills propositions which had nothing to do with money matters; that is, to prevent the inclusion of general legislation in appropriation bills” (Schuyler v South Mall Constructors, 32 AD2d 454, 455-456; accord, see, People v Tremaine, 252 NY 27, 48). By no means was the direction to contain welfare costs "general legislation” that had nothing to do with the money matters that were the focus of the Aid to Localities Budget. The provision violated neither the purpose nor the spirit of the Constitution (see, Schuyler v South Mall Constructors, supra).
CONCLUSION
The plaintiffs’ motion for summary judgment is denied, and the defendants’ cross motion for summary judgment is granted and the complaint dismissed. The temporary restraining order is vacated as of this date, under its own terms, and the defendants may recalculate the plaintiffs’ benefits in accordance with the current 18 NYCRR 352.2. In view of the difficulty of the issues raised and the financial status of the parties, no order as to cost is appropriate.

. Although a similar challenge was rejected in a Michigan appellate court (Pyke v Department of Social Servs., 182 Mich App 619, 453 NW2d 274, lv denied 437 Mich 1025, disagreed with on other grounds by Palozolo v Department of Social Servs., 189 Mich App 530, 473 NW2d 765, lv denied 439 Mich 879, 478 NW2d 143), this case is not binding, and in any event the plaintiffs raise substantially different arguments in support of their claim.

. This section allows States the option of absorbing the increase so long *637 as their over-all SSI expenditures do not decrease; the limited protection to recipients under this option is illustrated in Reichenthal v Harris (492 F Supp 637, supra).

. Basic Federal SSI benefits in 1974 were $140 a month for those living alone (20 CFR former 416.410 [1979]); at the time of the action they were $422, almost precisely a threefold increase. At the same time the basic *638 personal needs allowance under HR rose from $84 (18 NYCRR former 352.1 [1971]) to $112 (18 NYCRR 352.1), and the rent allowance for Monroe County exclusive of heat went from $120 (18 NYCRR former 352.3 [1971]) to $227 (18 NYCRR 352.3) — increases of 33% and 89% respectively.