OPINION OF THE COURT
Edward H. Lehner, J.
The controversy before me involves a dispute between the Legislature and the executive with respect to the power to determine how public monies should be spent. The specific legal issues presented are whether under the Constitution of the State of New York (i) the Governor can line-item veto legislative directions, segregations and limitations affecting the use of monies appropriated when set forth in “non-appropriation” bills, and (ii) the Legislature can constitutionally alter the directions affecting the spending of monies appropriated by provisions inserted in separate bills amending substantive laws that do not appropriate money.
In this action, commenced in 1998, the plaintiff Speaker of the New York State Assembly (the Speaker) seeks a judgment declaring that 55 line-item vetoes by the Governor of the State of New York (the Governor) interposed in 1998 in bills that did not appropriate monies violated section 7 of article IV of the NY Constitution.
Initially the Governor moved to dismiss based on a lack of standing and capacity to bring the action. That motion was denied by me in January 1999 (179 Misc 2d 315). The cross motion of plaintiff for summary judgment pursuant to CPLR 3211 (c) was adjourned pending service of an answer, but the entire action was subsequently stayed by the Appellate Division pending a determination of the appeal on the aforesaid issues. The Appellate Division (by a 3 to 2 vote) dismissed the action on July 20, 2000 for lack of standing and capacity (274 AD2d 57), which determination was reversed by the Court of *119 Appeals on July 10, 2001 (96 NY2d 532), and leave to reargue was denied on September 13, 2001 (96 NY2d 938).
There are now before me a motion by the plaintiff to determine his prior application for summary judgment, and defendant’s cross motion for summary judgment dismissing the action. Both parties agreed that there are no factual issues to be resolved (transcript, Jan. 11, 2002, at 2).
While the Governor’s answer did not contain a counterclaim seeking affirmative relief, the parties stipulated that, in addition to the issue as to whether the line-item vetoes were valid, there is before me a request by the Governor for a declaration that the items vetoed were unconstitutionally enacted by the Legislature.
The parties further stipulated that while the complaint deals with 55 vetoes, the court need only address 13 of that number. However, the Speaker argues that I need not examine the vetoes individually because the Governor’s vetoes were all unconstitutional in that they applied only to portions of “non-appropriation” bills (transcript, Feb. 14, 2002, at 5), while the Governor maintains that all of the vetoes were valid and that all of the provisions vetoed were unconstitutional as they affected appropriations in a manner not authorized by section 4 of article VII of the NY Constitution.
As his first argument on the motions now before me, the Governor maintains that the action should be dismissed on grounds of mootness as section 7 of article VII provides that an appropriation of money is valid for only two years “after passage of such appropriation.” The Speaker’s initial response to this defense was that the Governor made this argument before the Court of Appeals and that Court’s decision, although not mentioning the issue, stated that the “parties [’] remaining arguments are without merit.”
Since the record submitted to the Court of Appeals is not before me, I have no basis to sustain a finding that the Court had before it and considered the mootness issue. However, at oral argument the Speaker’s counsel acknowledged that all of the appropriations had lapsed and implementation was thus not feasible, and stated: “I think that what we are looking for is a declaration as to the respective powers of the Governor and legislative branch and not the next step of sort of unwinding or rewinding what happened two years ago.” (Transcript, Feb. 14, 2002, at 41.) With respect to veto 494, which is the only 1 of the 13 vetoes that did not involve an appropriation, but rather authorized the transfer of land at Creedmoor *120 Psychiatric Center to St. Francis Preparatory High School, the Speaker acknowledged that the option on the part of the school to acquire the property has expired (transcript, Feb. 14, 2002, at 44).
Thus while it is clear that the case is moot in that any veto found to have been unconstitutionally interposed cannot result in the appropriation being revived and implemented in the manner directed by the Legislature, courts have recognized exceptions to the mootness doctrine, which were stated in Matter of Hearst Corp. v Clyne (50 NY2d 707 [1980]), as involving “three common factors,” to wit: “(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues.” (At 714-715; see also, Matter of Rodriguez v Wing, 94 NY2d 192, 196 [1999]; Matter of Jones v Berman, 37 NY2d 42, 57 [1975]; Matter of Winner v Cuomo, 176 AD2d 60, 63 [3d Dept 1992].)
I find that this case fully fits within the criteria for adjudicating rights herein where the only aspect of the requested relief remaining before me is a declaration relating to the respective powers of the parties in the budgetary process. Throughout the years the budget has generally been adopted following tripartite negotiations among the Governor and the leaders of the two houses of the Legislature. In 1998 the Legislature adopted a budget without the imprimatur of the Governor, who therefore had no reluctance in line-item vetoing provisions in both appropriation and “non-appropriation” bills. The issues raised herein are novel, of significant public importance, and may not be capable of review other than through litigation (see, 96 NY2d at 541). A final determination of these issues will likely enable the parties to ascertain their respective powers in the budgetary process and eliminate uncertainty with respect thereto, and thus avoid future litigation which is probable absent a decision on the merits. Finally, it would be unjust to deny plaintiff a resolution of these issues which have been delayed, as aforesaid, by reason of three years of litigation on the sole question of his capacity and standing to seek a judicial determination of the issues.
The merits of this litigation essentially turn on the interpretation of four sentences of our lengthy Constitution. Section 7 of article IV, which grants the Governor line-item veto power, provides: “If any bill presented to the governor contain[s] several items of appropriations of money, the governor may object *121 to one or more of such items while approving of the other portion of the bill.”
Section 4 of article VII, dealing with the power of the Legislature in the budgetary process, provides:
“The legislature may not alter an appropriation bill submitted by the governor except to strike out or reduce items therein, but it may add thereto items of appropriation provided that such additions are stated separately and distinctly from the original items of the bill and -refer each to a single object or purpose.”
Section 3 of article VII, setting forth the obligation of the Governor with respect to appropriation bills, states: “At the time of submitting the budget to the legislature the governor shall submit a bill or bills containing all the proposed appropriations and reappropriations included in the budget and the proposed legislation, if any, recommended therein.”
The second paragraph of section 6 of article VII, setting forth restrictions on the content of appropriation bills, reads: “No provision shall be embraced in any appropriation bill submitted by the governor * * * unless it relates specifically to some particular appropriation in the bill, and any such provision shall be limited in its operation to such appropriation.”
In dealing with the 2001/2002 budget, the Legislature struck language from appropriation bills submitted by the Governor and enacted 37 single purpose bills which he signed. He subsequently brought action against the Senate and Assembly in Albany County alleging that the separate bills merely replaced the items of appropriation contained in his bills and thus violated the provisions of section 4 of article VII. He was upheld in this position by Justice Bernard J. Malone (Pataki v New York State Assembly, 190 Misc 2d 716), who further held that even if the Governor unconstitutionally placed language in a budget bill, the Legislature was powerless to delete it by reason of the limitation contained in the aforesaid provision of article VII (at 736). In his decision Justice Malone set forth a history of the provisions of the Constitution at issue which will not be repeated herein other than to indicate that as a result of amendments effective in 1927 greater power was given to the Governor in the budgetary process. An application by the legislative bodies for a direct appeal to the Court of Appeals was denied by that Court on May 2, 2002. Plaintiff acknowledged that if Justice Malone’s decision is upheld for the reasons stated by him, the Governor’s position herein would also have to be upheld (transcript, Feb. 14, 2002, at 49).
*122 Coming to the case at bar, the subject 13 line-item vetoes were of provisions inserted by the Legislature in bills submitted by the Governor as part of his budget plan, but which did not appropriate monies. However, except for veto 494 mentioned above, the vetoed provisions referred to appropriations in various bills that had been approved by the Legislature. The vetoed provisions in these “non-appropriation” bills either (i) suballocated appropriated funds, (ii) provided that the appropriation was contingent on the enactment of subsequent legislation, or (iii) set forth criteria to implement the appropriation. None of the material vetoed constituted substantive provisions that would become part of the Consolidated Laws of the state.
The following is illustrative of the nature of the vetoes involved herein. Part “C” of the bill enacted as chapter 56 (a 68 page bill as printed in 1998 McKinney’s Session Laws of NY) referred to a bill that had appropriated $180 million to the Department of Correctional Services to be used for the development, design and construction of a new maximum security 750-bed prison in Franklin County. By veto 3, the Governor disapproved language in the bill inserted by the Legislature that provided that the money may not be spent unless certain conditions are met and the expenditure authorized in a separate chapter, and that if built, the facility is to have “certain indoor common space, including a separate building which is suitable for education, recreational and other inmate activities.” After the veto of the foregoing, the prison was built, but the Speaker complains that it is being operated without legislatively prescribed constraints. In chapter 57, the Legislature referred to a bill that appropriated $96.8 million to the Insurance Department and contained suballocations for various programs, and $17 million for local administration of the STAR program. By vetoes 5 and 6, the Governor eliminated changes made by the Legislature to the suballocations. In chapter 58 the Legislature segregated a lump-sum appropriation for the Department of Environmental Conservation, and also provided that a $4 million appropriation for the development of the Hudson River is to await subsequent legislative authorization. These provisions were rejected by the Governor in vetoes 452, 453 and 454. The remaining vetoes applied to provisions in “non-appropriation” bills that made changes to provisions contained in the Governor’s appropriation bills similar in character to the foregoing.
The Speaker concedes that due to the nonalteration restriction contained in section 4 of article VII, the provisions vetoed, *123 as substitutions for the Governor’s proposals, could not have been inserted in the appropriation bills. However, it is urged that the Legislature was entitled to modify the directions in such bills by inserting alternative provisions in “non-appropriation” bills (a term the Court of Appeals noted is not found in the Constitution [96 NY2d at 535 n 1]) pursuant to the grant of legislative power contained in section 1 of article III.
The Governor maintains that acceptance of the Speaker’s position would permit the Legislature to do indirectly in a “non-appropriation” bill that which could not constitutionally be done directly in an appropriation bill. As a reason for permitting this seeming avoidance of constitutional limitations, the Speaker observes that the second paragraph of section 4 of article VII provides that an appropriation bill when passed by both houses of the Legislature becomes law without action by the Governor except for appropriations for the Legislature and judiciary and “separate items added to the governor’s bills,” which are subject to his veto power, and thus any substitutions could not properly be placed in an appropriation bill as the Governor would then have no opportunity to disapprove thereof.
The Governor further contends that since the vetoed provisions relate to the “when, how or where” appropriated monies may be expended, they are part of “items of appropriation,” and since they are substitutions, and not separately stated additions, to the provisions submitted by him, they unconstitutionally alter the appropriation bills. The Governor states that if the Legislature is unhappy with an item of appropriation put forward by him, it may reduce or strike the item, or may enact “a new single purpose” bill relating thereto which he must approve or reject in toto (transcript, Jan. 11, 2002, at 43, 47). In contrast here, the voided provisions were parts of voluminous bills amending numerous substantive provisions of the Consolidated Laws as well as authorizing the transfers of monies to specific funds, which measures the Speaker maintains were subject only to the general veto power. With respect to the issue of a separate single purpose bill, it is noted, contrary to the aforesaid position stated before me at oral argument, that in Pataki v New York State Assembly (supra) the Governor apparently took the position that the Legislature lacked even the authority to adopt such a separate bill if it altered an item in an appropriation bill, and that such position was upheld.
The first issue to be examined relates to the meaning of the term “item of appropriation” as used in the Constitution. In *124 Saxton v Carey (44 NY2d 545 [1978]), the question presented was whether the expenditures proposed in the 1978-1979 budget were adequately itemized. There the Court quoted with approval from the dissenting opinion of Judge Breitel in Hidley v Rockefeller (28 NY2d 439, 550 [1971]) that “[i]temization is an accordion word * * * [and the] specificness or generality of itemization depends upon its function and the context in which it is used * * * [and that] [i]n one context an ‘item’ of $5,000,000 for construction of a particular expressway might seem specific; in another, void of indication when, how, or where the expressway or segments of it would be constructed.” Although the Saxton Court held that the degree of particularization lies exclusively with the executive and legislative branches, it concluded that “[t]he courts will always be available to resolve disputes concerning the scope of that authority which is granted by the Constitution to the other two branches of the government” (at 551).
Budget bills submitted by the Governor may consist both of measures that appropriate money as well as programmatic bills amending substantive law to implement the appropriations. However, the contents of an appropriation bill are limited, as provided in section 6 of article VII, to provisions that relate “specifically to some particular appropriation in the bill.” Such provisions, as noted in Saxton v Carey (supra), may set forth the “when, how or where” the monies appropriated therein may be spent. Thus, being part of an item of appropriation, these provisions are subject to the “no alteration” restriction of section 4 of article VII.
In the most recent Court of Appeals case dealing with the constitutional provisions involved herein, New York State Bankers Assn. v Wetzler (81 NY2d 98 [1993]), the Legislature amended a 702 page appropriation bill to authorize the Commissioner of Taxation and Finance to assess fees against banks audited for taxes, and the Governor signed the bill into law. The law was challenged by a banking association on the ground that the Legislature acted beyond its authority by altering the bill in violation of section 4 of article VII. Defendant argued that while the fee provision was enacted as an alteration of the Governor’s budget in a manner that was technically unconstitutional, the Court should ignore the violation in light of the consent to the amendment by the other two branches of government. However, the Court found that to ignore the constitutional violation “would be to disparage the very foundation of the People’s protection against abuse of *125 power by * * * the tripartite form of government established in the Constitution” (at 105). This case illustrates that the traditional form of budget adoption by agreement of the Legislature and the Governor can give third parties rights when constitutionally prescribed procedures are not strictly followed, and raises the specter that other provisions in appropriation bills enacted in past years may be vulnerable to challenge.
In People v Tremaine (281 NY 1 [1939] [Tremaine II]), the Legislature struck out segregated appropriations submitted by the Governor, and substituted a single appropriation to each of various governmental departments. The Court found this substitution was in violation of section 4 of article VII as “the Legislature may not alter an appropriation bill * * * by striking out [the Governor’s] items and replacing them for the same purpose in different form,” and that amendments to appropriation bills “must be additions not merely substitutions” (at 11).
In People v Tremaine (252 NY 27 [1929] [Tremaine I]), the Legislature added to a Governor’s budget bill a provision requiring that the segregation of certain lump-sum appropriations be approved by the chairpersons of the Senate Finance Committee and Assembly Ways and Means Committee. This power to act on the segregation of appropriations was held to be unconstitutional as it engrafted executive duties upon a legislative office and usurped the executive power by indirection, concluding that the “Legislature may not attach void conditions to an appropriation bill * * * [and if] it attempts to do so, the attempt and not the appropriation fails” (at 45). Referring to what it considered a “largely academic” question in light of its aforesaid determination, the Court went on to discuss whether the provision inserted in the Governor’s appropriation bill giving power to the legislative chairpersons violated the “no alteration” restriction of section 4 of article VII. It concluded that since the provision did not strike out or reduce an item therein and was not a separately stated addition, “its insertion in the bill was improper,” and “much force attaches to the contention that such a direction is one which the Governor might veto” (at 49-50).
The bottom line here is that the Legislature has inserted several directions, segregations and limitations with respect to the spending of appropriated monies in a few voluminous bills submitted by the Governor amending numerous substantive provisions of state law (e.g., chapter 56 amended the Tax Law, Real Property Tax Law, State Finance Law, Administrative Code of the City of New York, Public Authorities Law, Vehicle *126 and Traffic Law, Public Health Law, Social Services Law, Mental Hygiene Law, Education Law and the Racing, PariMutuel Wagering and Breeding Law), and the Speaker would require the Governor to veto these substantive bills in toto in order to disapprove the inserted appropriation limitations, segregations and directions. I find that these insertions constituted alterations of “items of appropriation,” which is not permitted by article VII, § 4; the vetoed provisions being substitutions for the Governor’s proposals (see, Tremaine II, supra). This, of course, in no way affects the power of the Legislature to amend in any manner it sees fit any substantive provision contained in a budget bill submitted by the Governor.
By inserting these provisions that affect appropriations in bills that do not appropriate money, but which refer to bills that do appropriate money, the Legislature impermissibly attempted to do indirectly that which could not be done directly. In People ex rel. Burby v Howland (155 NY 270 [1898]), it was held that since the Constitution prohibited the abolition of a particular judicial office, the Legislature could not enact legislation that had the effect of preventing the incumbent from performing the duties of that office concluding that when “the main purpose of a statute * * * is to evade the Constitution by effecting indirectly that which cannot be done directly, the act is to that extent void, because it violates the spirit of the fundamental law” (at 280; see also, Schulz v State of New York, 84 NY2d 231, 241 [1994]; Wein v State of New York, 39 NY2d 136, 145 [1976]).
While the Speaker argues that “it is the Governor who seeks to do indirectly that which he is unable to do directly — legislate via the appropriation process” (Speaker’s mem of law, Apr. 3, 2002, at 1), section 3 of article VII provides that the governor may as part of his submitted appropriation bills submit “proposed legislation” recommended in connection therewith, and section 6 of that article states that any provision in an appropriation bill must relate “specifically to some particular appropriation in the bill” and “be limited in its operation to such appropriation.” While this is not to say that the Governor may submit substantive legislation as part of an appropriation bill, e.g., amend the Penal Law to alter the definition of robbery in a bill appropriating monies to construct a new prison, he may propose in such bill the location and type of prison to be built, which the legislature may accept or reject. (See, Schuyler v South Mall Constructors, 32 AD2d 454 [3d Dept 1969]; cf. Tremaine I.) But it may not constitutionally place alterations of *127 the Governor’s appropriation related legislation stating “when, how or where” monies may be expended in nonappropriation programmatic bills. It is noted that no claim is made herein that the Governor included substantive law amendments in the appropriation bills at issue, although in Pataki v New York State Assembly (supra), Justice Malone found that substantive law changes may be contained in appropriation bills “to implement the Governor’s ‘complete plan’ of income and expenditures” (at 733).
Thus, the Governor’s motion for summary judgment is granted and it is declared that the provisions he vetoed (other than veto 494 which did not relate to appropriations, but which is moot) were unconstitutionally enacted by the Legislature and are thus void.
With respect to the right of the Governor to line-item veto the subject provisions, he maintains, inter alia, a right to so veto alterations to his appropriation bills on the grounds that they were unconstitutionally enacted. However, I find no provision in the Constitution granting such right on that basis. But since I have determined that the vetoed provisions were not constitutionally adopted, there is no need to determine whether the items were constitutionally vetoed.
As a “postscript,” it is observed that should the Legislature believe that the constitutional balance of power in the budgetary process is unwise, it, of course, is free to submit to the voters by joint resolution a proposal for a constitutional amendment, which resolution would not be subject to gubernatorial approval.