*195 OPINION OF THE COURT
Levine, J.
Respondent Commissioner of the Westchester County Department of Social Services (DSS) contracted with a private non-profit agency to provide shelter for petitioner Elias Rodriguez, a homeless person who is permanently disabled by mental illness. As a condition of continued receipt of that housing assistance, DSS required petitioner to use a portion of his Federal disability benefits to contribute to the cost of the shelter. DSS allowed petitioner to retain, out of his Federal benefits, a sum equal to the statutory standard of monthly need apart from shelter to which petitioner was found to be entitled under Social Services Law § 131-a (2). The issue in this case is whether DSS could legally require petitioner to assign all but the retained portion of Federal benefits as a condition for the continued provision of housing assistance by way of direct payments to the residence on petitioner’s behalf. We agree with Supreme Court and the Appellate Division that it can.
Petitioner began receiving the temporary shelter assistance in 1986. DSS paid Westhab, Inc., which operated the New Windham Residence in Yonkers, $1,800 per month to house petitioner. While residing at New Windham, petitioner began receiving $564 per month in Supplemental Security Income (SSI; see, 42 USC § 1382) and Social Security Disability (SSD; see, 42 USC § 423) from the Federal Government. He also received food stamps.
DSS determined that petitioner’s standard of monthly need was $1,937, $112 under Social Services Law § 131-a (2) (a), plus $1,800 for shelter and $25 for energy costs under Social Services Law § 131-a (2) (b). Since the $1,800 cost of petitioner’s shelter plus the $564 he was receiving in Federal disability benefits exceeded petitioner’s standard of monthly need by $427, DSS required petitioner to sign a “Voluntary Assignment of Income” agreement under which he would pay DSS $427 per month as long as he continued to receive “temporary emergency housing assistance.” Petitioner agreed that he might forfeit his entitlement to temporary housing for any month he failed to make the contribution. He subsequently requested a fair hearing from respondent State DSS Commissioner, and an Administrative Law Judge rendered a decision upholding the actions of the County DSS.
In March 1997, petitioner commenced this CPLR article 78 proceeding to annul the fair hearing decision. Supreme Court *196 confirmed the decision and dismissed the petition. The Appellate Division affirmed (255 AD2d 589). We granted leave to appeal and now affirm.
As a threshold matter, DSS argues that this appeal is moot because petitioner is no longer receiving temporary housing assistance, never gave DSS any of his Federal benefits and has no property from which DSS could recover the value of the assistance rendered (see, Social Services Law § 104). Even if there is no live case or controversy before us, however, the appeal should be retained. The issue presented here will recur whenever DSS requires future recipients of housing assistance to sign the “Voluntary Assignment of Income” form. Moreover, it will typically evade review because of the relatively short time period in which a person would normally be expected to receive temporary emergency shelter (see, Social Services Law § 131-v [3]). Finally, the issue is both novel and substantial; it has significance for the administration of temporary housing assistance for disabled homeless persons receiving SSI or SSD. Thus, the exception to the mootness doctrine is applicable (see, Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715). We turn then to the substantive question presented for review.
The parties are in agreement that DSS paid the $1,800 per month under Social Services Law § 131-v. The State and County DSS determined that the payments were a form of “safety net assistance” and could be offset by petitioner’s available resources under Social Services Law § 131-a (1). Petitioner’s opposing position is premised on the contention that Social Services Law § 131-v creates or describes a separate and independent source of entitlement to “temporary emergency shelter” that is not part of the safety net assistance program. We disagree with petitioner.
Safety net assistance, which was called “home relief’ when petitioner first began residing at New Windham (see, L 1997, ch 436, pt B, § 141), is a type of “public assistance” (see, Social Services Law §2 [19] [safety net assistance]; Social Services Law § 2 [former 18] [home relief]). Public assistance is required to be awarded “less any [of the recipient’s] available income or resources” (Social Services Law § 131-a [1]). Under regulations promulgated under Social Services Law § 131-a, a homeless individual receiving temporary housing assistance must “apply for and use any benefits and resources that will reduce or eliminate the need for temporary housing assistance” (18 NYCRR 352.35 [f]). In addition, DSS “must deny or discontinue a person’s * * * temporary housing assistance if it determines *197 that the person * * * is required to, but is not applying income and/or using available resources to reduce or eliminate the need for temporary housing assistance” (18 NYCRR 352.35 fel).
We agree with the courts below that petitioner’s temporary housing was safety net assistance and that the offset conformed with 18 NYCRR 352.35 (f)-(g). Payments under Social Services Law § 131-v are not a separate entitlement outside the definition of public assistance. Therefore, there is no basis for excluding them from the section 131-a (1) offset. Social Services Law § 131-v is located in Social Services Law article 5, New York’s statutory scheme for providing public assistance. Consequently, section 131-v is subject to the “general provisions” contained in title 1 of article 5, including Social Services Law § 131-a (1).
Moreover, payments under Social Services Law § 131-v are simply one form of safety net assistance. The safety net assistance program provides non-cash assistance in the form of direct payments to a shelter operator (see, Social Services Law § 159). In 1991, the Legislature added Social Services Law § 131-v (L 1991, ch 695), which provides that “a social services official may contract with a non-profit corporation or charitable organization to provide temporary emergency shelter” (Social Services Law § 131-v [1]) if “no other suitable privately owned housing * * * is available, other than a more expensive hotel or motel” (Social Services Law § 131-v [2] [emphasis supplied]). Thus, Social Services Law § 131-v merely authorizes DSS payments to non-profit organizations which are able to provide cheaper housing than commercial boardinghouses. It does not create any new program to help the State’s homeless population.
The legislative history of Social Services Law § 131-v further supports this interpretation of that provision. The Sponsor’s Memorandum explained that emergency shelter to the homeless was already being provided under the home relief program at that time and that section 131-v was needed merely to “authorize local social services districts to place homeless households in accommodations provided by not-for-profit organizations at a cheaper cost than commercial hotels or motels” (Sponsor’s Mem in Support, Bill Jacket, L 1991, ch 695, at 16, reprinted in 1991 NY Legis Ann, at 394). The Memorandum proceeded to give an example of the expected savings that would result from Westchester County’s making payments under the home relief program to non-profit corporations instead of welfare hotels (id., at 17).
*198 Thus, the Legislature considered payments under Social Services Law § 131-v to be home relief, or safety net assistance as it is called in the present statutory nomenclature, and petitioner’s argument that payments for shelter under Social Services Law § 131-v are not “public assistance” is without merit. Furthermore, the application of this offset to petitioner, a recipient of safety net assistance for 10 years, does not violate NY Constitution, article XVII, § 1, because under the requirements which DSS imposed, petitioner’s aggregate benefits would not even have dropped below his monthly standard of need (see, Matter of Bernstein v Toia, 43 NY2d 437, 449). Here, petitioner’s Federal disability benefits were available to petitioner to pay for his shelter, and the portion of those resources exceeding the remaining components of his standard of need was properly applied to the $1,800 per month cost of shelter.
Alternatively, petitioner argues that what he received could not be safety net assistance because Social Services Law § 157 (1) denies eligibility for safety net assistance to recipients of Federal SSI benefits. In Matter of Lee v Smith (43 NY2d 453), however, we held that the denial of home relief (the predecessor of safety net assistance) to recipients of SSI was unconstitutional (id., at 463). Consistent with that case’s holding, the Department of Social Services regulations now provide that “[sjafety net assistance must not be denied or discontinued solely on the basis that the applicant/recipient is in receipt of SSI” (18 NYCRR 370.7). Thus, there is no valid statutory bar from treating petitioner’s shelter benefits as public assistance.
Petitioner makes the additional argument that DSS denied him “additional state payments” as a disabled person under Social Services Law § 209. Even if we were to assume that petitioner was “eligible to receive additional state payments” by reason of his disability under Social Services Law § 209 (1), he would only be “entitled to receive monthly an additional state payment in an amount equal to the difference between the monthly standard of need applicable [under section 209] * * * and the sum of [petitioner’s] * * * supplemental security income benefit plus countable income” (Social Services Law § 209 [4]). Countable income includes “a person’s income, in cash or in kind, both earned and unearned, which is not excluded by federal law or regulations or by regulations of the department [of Social Services] in determining the need of an individual for supplemental security income benefits or additional state payments” (Social Services Law § 208 [6] *199 [emphasis supplied]). Here, the sum of petitioner’s SSI benefits and countable income, $1,937, exceeds his standard of need under Social Services Law § 209 (2). Therefore, petitioner is not entitled to any additional payments.
Petitioner’s remaining contentions are without merit. Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
Order affirmed, without costs.