*760 OPINION OF THE COURT
William P. Polito, J.
The issue raised is whether the State’s interpretation and application of Social Services Law § 366 (2) (a) (7) as amended in 2005, denying Medicaid to the three blind, elderly and/or disabled petitioning couples, unless and until they spend down to a lower standard of need than that stated in Social Services Law §§ 207 and 209 (2), violates the uniform standard mandated by Social Services Law §§ 207 and 209 (2).
The answer is in the negative for two of the petitioning couples, the Krumbeins and the Taylors, and in the affirmative for the third couple, the Blairs. Accordingly, the Blair matter is referred back to the referee for a determination in accordance herewith.
Contentions
The State has interpreted the Social Services Law § 366 (2) (a) (7) Medicaid income eligibility standard of $900 per month for 2006 as applicable to the three couples. The formula used in that section is asserted to be the maximum amount allowed by the federal government in order for the State to qualify for partial Federal Medicaid reimbursement.
The three petitioning couples, who are blind, elderly and/or disabled, contend that the resulting required “spend down” to $900 for nonmedical necessities statutorily or constitutionally violates the standard mandated by Social Services Law §§ 207 and 209 (2), which they contend for the year in dispute, 2006, is $1,008 for nonmedical necessities for all blind, elderly and/or disabled couples. They especially point to the resulting inequality within that section 209 (2) neediest classification, which allows some in that class, those receiving Federal Supplemental Security Income (SSI) benefits of $904 plus a $104 additional supplement wholly from state funds, the full benefit of $1,008 for nonmedical necessities plus Medicaid, while the non-SSI recipients in that same classification, including the petitioners, who are equally in need are restricted to $900 for nonmedical necessities plus Medicaid.
The State contends that its Medicaid standard is a valid economic subclassification for all non-SSI recipients, and is uniformly applied to all categories of financially needy persons within both classifications, including the blind, elderly and/or disabled. It argues that the inequality with SSI recipients does not result from a different standard or classification set by the *761 State. Rather, it is the federal government who allows the SSI recipients to have a higher standard of need or income for nonmedical necessities without loss of Medicaid, i.e., $1,008 ($904 federal amount and $104 state supplement).
Law
Classification of Financially Needy Federal
The federal government has elected to care for the most needy of its residents, and has declared that the neediest are those couples who are blind, elderly and/or disabled, and below a certain income level. They are called “categorically needy,” and entitled to welfare assistance under its SSI program. The definition, which includes the physical characteristics of blindness, disability, or elderliness and income below a specified income level has survived judicial scrutiny as a favored separate class. (Schweiker v Hogan, 457 US 569, 581, 589, 591 [1982].) For the year in question, 2006, the Federal SSI “standard of need,” which determines eligibility as well as the “level of benefit” of a guaranteed minimum income level to which those couples are entitled, was $904 a month. In addition, the categorically needy by federal standards are also entitled to Medicaid. The additional New York State supplement of $104 is provided pursuant to Social Services Law § 209 (2) and does not affect their Medicaid eligibility (42 USC § 1382a [b]; 20 CFR 416.1124), thus providing these recipients with $1,008 a month for nonmedical necessities.
None of the three petitioning couples, although also physically blind, elderly and/or disabled, qualify as “categorically needy” by federal standards because each of their incomes is above the $904 monthly eligibility requirement.
New York State
New York has two classifications of financially needy.
“The amount of public assistance a person actually receives under any of these programs depends upon his ‘standard of monthly need.’ There are in fact two distinct standards of monthly need: one for [specified income limited] aged, disabled and blind (Social Services Law, § 209, subd 2), and the other for all other classes of needy persons (Social Services Law, § 131-a, subd 2).” (Matter of Lee v Smith, 43 NY2d 453, 458 [1977].)
In defining the first and neediest class of residents, the State also selected, similar to the federal classification, those who *762 were blind, elderly and/or disabled, and income limited. But the State chose for its neediest residents an increased income eligibility class, which included not only the “categorically needy” by federal standards, but also those blind, elderly and/or disabled couples whose monthly incomes for 2006 were above the federal standard, but below $1,008. For those neediest under section 209 (2) on SSI the State provides the additional supplement to the SSI recipients, but allows the federal government to administer it by way of separate agreement. The others’ supplement is directly administered by the State.
Two of the petitioning couples, the Krumbeins and Taylors, are also not in the neediest state classification, but in the second New York less needy classification as their income was greater than $1,008 per month. The Blairs are within the New York State declared neediest classification as their income was below $1,008.
Medically Needy
For purposes of Medicaid eligibility, the standard of eligibility for all medically needy New York couples, except for the SSI recipients who are in the State’s first classification, is set at the maximum which the federal government will allow in order for the State to be partially reimbursed with federal funds. For the year 2006 that standard of need for eligibility for a couple was $900 per month. Accordingly, the three petitioners were required to spend down to $900 for necessities and apply any excess income toward their medical expenses before the State would provide Medicaid coverage for their remaining medical expenses. This meant that the three couples only had $900 for their nonmedical necessities, which contrasted with the SSI recipients who were allowed $1,008 towards their nonmedical expenses of which $104 was provided wholly from state funds.
SSI recipients were excluded from State Medicaid limitations because the Federal Legislature required the Medicaid states, such as New York, to provide Medicaid to the “categorically needy” and to exclude them from the state’s maximum Medicaid limitation formula for reimbursement. (Scarpuzza v Blum, 73 AD2d 237, 241-243 [2d Dept 1980].) The regulations additionally provided that the State’s additional supplement under section 209 (2) is excluded from countable income for eligibility purposes. (42 USC § 1382a [b]; 20 CFR 416.1124.)
Since none of the three petitioning couples are below the income level of the federal category of neediest (categorically needy), but one of the three is below the income level of New *763 York State’s category of neediest (Social Services Law § 209 [2]), it requires two disparity analyses. One — the unequal treatment of the blind, elderly and disabled who are categorically needy under the federal definition (SSI recipients) from all other blind, elderly and disabled needy under the state law’s second classification, whose incomes are above $1,008 per month. Two— the unequal treatment within New York State’s neediest classification between the categorically needy (SSI recipients) and other blind, elderly and disabled in the same state classification whose incomes are below $1,008 per month.
Categorically Needy (Federal) and Non-Categorically Needy (State)
The U.S. Supreme Court has reviewed a disparity similar to that of the two petitioners, the Krumbeins and Taylors. In Schweiker, the state declared two state classifications — one synonymous with the federal classification of categorically needy, and the second included those elderly, blind and disabled who were non-categorically needy. The state standard for the SSI recipient classification included a state supplement, and was higher than the Medicaid eligibility standard of its non-categorically blind, elderly and/or disabled citizens, which for receipt of Medicaid coverage required those non-categorically needy persons to apply a portion of their income to medical expenses (spend down). The result was that the categorically needy, as here, in that state’s first classification had more income for nonmedical necessities than the non-categorically blind, elderly and/or disabled in the state’s lesser classification. (Schweiker at 586, 589.) The U.S. Supreme Court determined that, while the lower classification amount may appear unreasonably low, such disparity was within the state’s legislative prerogative since it was based on its economic judgment of the best use of limited available public funds, and was not invidious 0Schweiker at 590-593); therefore, it did not violate federal constitutional or statutory provisions. In fact, such result was known and anticipated when the federal legislature set its maximum medical eligibility limits for states to receive partial Medicaid reimbursement. (Schweiker at 579, 580 n 16, 586.)
The same standard of review for challenges of classification disparity, under the Equal Protection and Due Process Clauses of the Federal Constitution — whether it has a rational basis or relationship to a legitimate state interest — was also applied by New York courts to the New York State Constitution: “the Constitution vests the Legislature with discretion in determining *764 the amount of aid, and in classifying recipients and defining the term ‘needy’ [and in establishing programs to aid those in need].” (Lovelace v Gross, 80 NY2d 419, 424 [1992] [internal quotation marks omitted].)
New York State, in applying that standard, declared that the disparity between those two classifications of “categorically needy” and “non-categorically needy,” in which the former received a higher standard than the latter, if based on economic judgment had “support in reason and authority.” (Lee at 461.) The rationale that there was a higher need for the blind, elderly and/or disabled within certain income limits was justified. (Matter of Glosenger v Perales, 83 NY2d 984 [1994].)
For the same reason, however, providing less financial assistance to the “categorically needy” who were declared as the neediest by the federal and state governments than to those declared less in need violates the New York State Constitution. CLee at 462-464.)
Standard of Need Versus Level of Benefit
In New York “the essentials of life” constitute the standard of need. “[Standard of need . . . represents the State’s view of the amount necessary to provide for the essential needs, such as food, clothing, and shelter . . . (RAM v Blum, 533 F Supp 933, 937.)” (Lovelace at 422 [internal quotation marks omitted].) The “standard of need” set by each state is “a yardstick for measuring who is eligible for public assistance.” (Rosado v Wyman, 397 US 397, 408 [1970].)
The amount provided toward that standard is the “level of benefit,” which is not necessarily the same amount; nor is a state required to fully fund the standard of need. However, Social Services Law § 209 (2), like SSI, is set as both standard of need and level of benefit. (Cf. Rosado v Wyman, 397 US 397, 409, 418-419 [1970] [“It is, of course, possible to pay 100% of need as defined. New York, in fact, purports to do so”].)
Inapplicability of Section 209 (2) to Krumbeins and Taylors
The Krumbeins and Taylors further contend that Social Services Law §§ 207 and 209 (2) require all blind, elderly and/or disabled — even those in New York’s lesser needy class — to have the same standard of need and level of benefit as set forth in section 209 (2). This contention is without basis in the language of the statute.
The class of persons designated in section 209 (2) is clearly defined and limited to those blind, elderly and/or disabled whose *765 incomes are below the stated level, which would exclude the two petitioners, as well as those blind, elderly and/or disabled similarly situated in the lesser classification of need because they have a higher level of income than the neediest classification.
Accordingly, the court finds no state constitutional or statutory violations in the structure of New York’s two classifications of financially needy, or its resultant disparity between the two couples after the application of the overlay of the Medicaid eligibility standard, which provides them the additional payment of their medical expenses but requires a portion of their allotment for necessities to be first applied to those medical expenses.
Section 209 (2) Inequality among New York State’s Neediest
Based upon the aforesaid, New York could have elected to declare that New York’s neediest classification of section 209 (2) was limited to the federal standard (i.e., categorically needy) for economic reasons, and excluded all others; or even possibly have created a two tiered standard in the first classification. Instead, despite the increased economic costs, in promulgation of its constitutional mandate, the Legislature in Social Services Law § 209 (2) increased the state standard of need from the federal standard for its SSI recipients, and expanded the classification of its neediest to uniformly also include those blind, elderly and/or disabled whose incomes were above the federal level, but below the state section 209 (2) standard. For the year 2006 the SSI recipients received an additional state grant of $104 and the others a commensurate supplement. Since the Legislature realized that SSI recipients were automatically required to receive Medicaid it understood the state supplement of $104 was for nonmedical necessities. In furtherance of that intended result to equalize this benefit for the non-SSI recipients, additional neediest couples in this highest classification, the standard of need was uniformly maintained each year at a higher standard than the federal standard by including each year the annual cost of living increase, which was added to the 133V3 Aid to Families with Dependent Children (AFDC) standard. (State of New York Dept of Health letter with attachments, dated June 24, 2008, addressed to Richard Benitez, Assistant Attorney General.)
The unintended disparity at issue here only occurred when the federal government determined the State’s use of the annual cost of living increase for Medicaid eligibility was an *766 improper method. The State’s resort to solely the 133V3 AFDC standard without the same annual cost of living then resulted in a lower Medicaid eligibility standard than the Social Services Law § 209 (2) standard. The resultant disparity caused some of New York’s neediest (SSI recipients) in that neediest classification to receive the $104 supplement for nonmedical necessities, while the others did not.
However, the Social Services Law § 209 (2) standard for the neediest New York residents requires all in that classification, whom the Legislature has determined to be equal in need, to be treated equally in their standard of need and level of benefit. (Lee at 460.)
Since the Legislature has legislatively determined that there is no underlying difference in the need of the Blairs, who are in the class of New York’s neediest, it cannot provide lesser state benefits than to other similarly situated persons in that same class. (Lee at 461.) Nor, where their needs are identical as defined by state policy, can some state benefits be reduced because a different government entity is paying a portion of that need. (Id. at 462.)
Income uniformity for persons within the same classification is also required by federal regulations: “a Medicaid agency must use an income standard . . . that is . . . [u]niform for all individuals in a covered group.” (Matter of Glosenger v Perales, 83 NY2d 984, 987, 989 [1994] [dicta], quoting 42 CFR 435.811.)
The continued equality between the two groups within that neediest classification of section 209 (2) could have been achieved by legislating that in those years when the Medicaid eligibility standard was lower than the section 209 (2) standard all of those in the class, including SSI recipients, would not receive the wholly state supplemental funds for nonmedical necessities (Matter of Rodriguez v Wing, 94 NY2d 192 [1999]); or alternatively, it could also have provided additional supplemental funds to the non-SSI recipients in that class from Home Relief to equalize the $1,008 for nonmedical expenses. (Cf. Lee at 461-463.) There may be other approaches, such as use of the “disregard” allowances which might not jeopardize Federal Medicaid reimbursement while still equalizing all of the neediest couples at the higher level. (Lee at 458-462; see also State of New York Dept of Health letter with attachments, dated June 24, 2008, addressed to Richard Benitez, Assistant Attorney General.)
Construction of statutes requires that the standards under Social Services Law § 366 (2) (a) and § 209 (2) are to be *767 interpreted consistently. (Stenson v Blum, 476 F Supp 1331, 1333 [SD NY 1979].) Accordingly, this court determines that the said statutes as written and interpreted together compel that the Blairs not be required to spend down to $900, but to $1,008 for the year 2006, or that they be provided Home Relief to supplement the loss. The State is required to use the section 209 (2) standard of need for a household of two, i.e., the combined SSI and state supplemental portion and must treat all couples in that classification uniformly.
If such statutory construction is irreconcilable, then New York’s equal protection guarantees and its constitutional mandate to assist the needy as promulgated in Social Services Law § 209 (2) takes precedence over Social Services Law § 366 (2) (a) as applied to the Blairs. (Lee at 460, 463; Matter of Arnold v Reed, 43 NY2d 829 [1977].)
Inasmuch as other statutory factors not raised here may be applicable at a hearing, this court will refer the matter back to the referee for a determination in accordance with the principles stated herein.
Class Action Denied
Also, since there are other differing factors within the same medical classification, the court does not grant class status to those similarly situated to the Blairs.